## Johnson v. Commonwealth.

(Decided December 7, 1923.)

### Appeal from Johnson Circuit Court.

Criminal Law—Each Hand at Stud Poker a Separate Offense, and Conviction of One Not Bar to Prosecution for Another.—Each hand of cards dealt in a stud poker game, there being a separate bet on each hand, constitutes a separate offense, though at the same sitting, and a conviction for engaging in one hand does not bar a subsequent conviction for engaging in another hand.

W. W. WARD for appellant.

THOS. B. McGREGOR, Attorney General, and ED. L. ALLEN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the July, 1922, term of the Johnson circuit court, the appellant and defendant below, Ben Johnson, was twice tried and convicted under two separate indictments, returned by the grand jury at that term, accusing him of engaging in a game of hazard or chance at which money or other property was bet, won or lost within five years prior to that time, an offense denounced by section 1977 of our present statutes. On his arraignment at his second trial he entered a plea of "not guilty," and also one of "former conviction," in support of the latter of which he relied upon his conviction at his trial under the first indictment. Each indictment named eight other persons as participants in the game and jointly guilty with him. Only one other person besides himself was named in both indictments as joint participants. The evidence for the Commonwealth on both trials showed that the game of hazard in which defendant and his associates participated was what the witnesses called "stud poker," and that defendant began to play it about nine o'clock p. m., and continued his sitting until about one o'clock the following morning, a period of about four hours; and that during that time the cards were separately dealt and defendant played for some seventy-five or more combined contributions, designated by the witnesses as "pots;" that at the end of each deal of the cards, the winner would take the pot and after that another or a new deal would be made with the same result, and that process continued throughout the time defendant was so engaged.

The court on each trial submitted to the jury the guilt or innocence of defendant as a player with the persons named in that particular indictment, and on the second trial, wherein the plea of former conviction was interposed, this additional instruction was given: "Cards that are dealt when something of value is bet, and the dealt cards are then played and the winnings are distributed is a game as used in these instructions." Defendant objected to that instruction and also objected to the refusal of the court in not directing his acquittal, upon the ground that the first conviction was a bar to the offense of which he was accused in the second indictment, and on this appeal from his second conviction his counsel insist that the entire period of the sitting of defendant, during which he bet numerous times upon the proven hazard, constituted but a single game, whether each deal of the cards was played with the same persons or not; and that since the unlawful conduct with which he is accused in both indictments occurred at that sitting, his first conviction was a bar to the Commonwealth's right to try him under the second indictment.

On the other hand, the Commonwealth insists that in playing each hand that was dealt, and after determining who was the winner on that deal, each participant was guilty of violating the statute, since he, by so doing, engaged in a "hazard or game on which money or property is (was) bet, won or lost."

The court, as will be seen, agreed with the Commonwealth and so instructed the jury, and the propriety of that ruling is the sole question for determination on this appeal. In view of our conclusions, stated below, it will be unnecessary to discuss or determine whether the fact that different persons participated in the betting on the result of different deals would affect the question, although all of them were played at one sitting.

The text in 27 Corpus Juris, 973, in defining the constituent elements of a bet, says: "A bet is an agreement, between two or more, that a sum of money or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain; a promise on the part of each of the betting parties to pay to the other party the amount of his bet if he loses; a wager; the hazard of money upon an incident by which one or both parties stand to win or lose by chance; the

mutual agreement and tender of a gift of something valuable, which is to belong to the one or the other of the contracting parties, according to the result of the trial of chance or skill, or both combined.'' On page 975 of the same volume, it is stated in substance that in every bet or wager there must be two or more parties having mutual-and reciprocal rights in the money or other property wagered, which is usually called the stakes, and that to make the transaction a bet or wager each of the parties must jeopardize something and have a chance to recover the stakes upon the determination of the contingent or uncertain event in his favor. Further along on page 979, it is stated: ''To bet is to put to hazard a sum ascertained upon a future happening of some event then uncertain; to stake or pledge money or property upon an event of a contingent issue.'' In all gambling there must the element of chance and some agreed course of action by which it is determined. The same general principles and definitions are found in the text of 12 R. C. L. 712-14, and what we have thus far said has received the endorsement of all the courts before which the questions have arisen.

Accordingly, it would seem that, independently of any direct adjudications, the hazard or game denounced by the statute is complete upon the determination of the event upon which the stake is made, and that the determination of another one upon which an independent, separate and different stake is made would constitute and be a separate and distinct hazard or game, and the ones participating therein would be guilty of another and independent offense. All the authorities agree that the offense here involved ''is complete though the person gambling played at the prohibited game only once.'' R. C. L. supra, 713; Corpus Juris, supra, 999; Cameron v. State, 15 Ala. 383; Swallow v. State, 20 Id. 30; Buck v. State, 1 Ohio St. 61; Torney v. State, 13 Mo. 455; Day v. State (Texas), 11 S. W. R. 36; Parks v. State, 57 Tex. C. R. 569, 123 S. W. R. 1109; Wrenn v. State (Texas C. R.), 200 S. W. R. 844; Wingard v. State, 13 Ga. 396, and Ramsey v. State, 5 Sneed (Tenn.) 652. If that be a correct principle, which is no doubt true, it would seem to necessarily follow that a conviction or acquittal for playing one hand, in the character of game here involved, which, according to the authorities, supra, is a complete offense, would not be a bar to a prosecution for playing another hand, although both may have occurred at the same sitting.

However, we are not dependent altogether upon our own reasoning to arrive at that conclusion, since the exact question was before the courts in the Torney, Wrenn, Parks and Day cases, *supra*. It was held in those opinions that each play at which the stakes were taken down constituted a separate offense and that the statute was violated on each occasion that it was done, though all of them were during the same sitting. In some of those cases dice instead of cards were played, and, as here, the playing was continuous or at one sitting. The first conviction was interposed as a bar in the second trial for an offense based upon another playing at the same sitting. In the Torney case, the court gave to the jury an instruction saying: "That every act of betting, even at the same sitting, is a distinct offense for which the defendant is liable to indictment and fine," and which instruction the court approved, and it was in substance the same as the one given in this case.

We have found no adjudications to the contrary, unless it be the opinions in the Wingard and Ramsey cases, *supra,* one by the Georgia Supreme Court and the other by the Tennessee Supreme Court. But differently worded statutes from ours were before those courts for interpretation, and we do not regard the opinions as militating against the conclusions we have reached and which the other cited cases approve. If, however, they could be regarded as direct authority for a contrary conclusion, we would not be inclined to follow them in view of the other cases cited, and in view of the necessary result flowing from what all the authorities hold, that one participation where the stakes are recovered is a complete offense. Surely it could not be contended that conviction for one unlawful betting on a horse race, made on one racing occasion, would bar a prosecution for all others made on the same occasion but on different races; and we can discover no difference between betting on a number of horse races on one continuous occasion, and playing a number of games of cards or dice at or on a like continuous sitting or occasion.

We, therefore, conclude that the court properly instructed the jury and the judgment is affirmed.