445 P.2d 837

**STATE of Arizona, Appellee,**

v.

**Jesse Ray MAXWELL, Appellant.**

**No. 1807.**

Supreme Court of Arizona.

In Banc.

Oct. 11, 1968.

Rehearing Denied Nov. 12, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Vernon B. Croaff, Public Defender, Grant Laney, Deputy Public Defender, Phoenix, for appellant.

LOCKWOOD, Justice:

Jesse Ray Maxwell was convicted of the crime of passing a forged instrument and was sentenced to serve a term of not less than fifteen nor more than twenty years in the Arizona State Prison. His sentence was determined on the basis of an admitted prior conviction pursuant to A.R.S. § 13–1649 (1956). Appellant contends that his conviction and sentence should be reversed on the grounds: (1) that the evidence was insufficient to sustain the verdict; (2) that the information filed against him, and upon which the prosecution was instituted, did not state a crime under the statutes of Arizona; (3) that the trial court's failure to grant a continuance was prejudicial error; (4) that the court erred in denying the motion for new trial, and (5) that misconduct on the part of the county attorney deprived defendant of a fair and impartial trial. We consider these propositions chronologically.

The information filed by the State set forth the following charge:

"JESSE RAY MAXWELL is accused this 17th day of August, 1966, by the County Attorney of Maricopa County, State of Arizona, by this information of the crime of FORGERY (PASSING), A FELONY committed as follows, to wit:

"The said JESSE RAY MAXWELL on or about the 14th day of July, 1966 and before the filing of this information at and in the County of Maricopa, State of Arizona, did utter or pass as true and genuine to DON BRAATEN for SAFEWAY STORES a certain forged instrument purporting to be a check dated July 14, 1966, on the Melody Lounge Account with the Valley National Bank in the amount of $283.43, payable to Jesse Maxwell and purportedly signed by Henry R. Meza; all in violation of Section 13–421, A.R.S."

Appellant entered a plea of not guilty to the charge but made no motion to quash the information at his arraignment as provided for by Rule 166, Rules of Criminal Procedure, 17 A.R.S. (1956). At trial, after the State's evidence was in, appellant moved to quash the information on the ground it failed to state a punishable offense. He contended that the State had failed to allege in the information that the purportedly forged instrument was passed with intent to defraud and was passed with knowledge that it was a forged instrument. The Court heard arguments on the motion and thereafter denied the motion to quash.

The specific statute which appellant was alleged to have violated, A.R.S. § 13–421 (1956), reads in pertinent part as follows:

"A. A person is guilty of forgery who, with intent to defraud:

"1. * * * utters, publishes, passes * * * as true and genuine, any of the false, altered, forged, or counterfeited matter described above, [which designates many written instruments, including 'check'] knowing it to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any person * * *."

We have previously held that the intent to defraud within A.R.S. § 13–421 is an "essential element" which must be proved. State v. Maxwell, 95 Ariz. 396, 391 P.2d 560 (1964). However, Rule 115, Rules of Criminal Procedure, 17 A.R.S. (1956), provides:

"A. The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

"1. By using the name given to the offense by the common law or by a statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be ·charged.

B. The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

■■ This Court has further previously held that an information, in order to be legally sufficient, must fairly indicate the crime charged, must state the essential elements of the alleged crime, and must be sufficiently definite to apprise the defendant so that he can prepare his defense to the charge. State v. Double Seven Corp., 70 Ariz. 287, 219 P.2d 776, 19 A.L.R.2d 1007 (1950); State v. Smith, 66 Ariz. 376, 189 P.2d 205 (1948). We are of the opinion that the information sufficiently meets this test when read in the light of Rule 115, supra. Appellant was definitely informed of the name given the offense by the statute, i. e., "forgery", and of the specific conduct alleged "all in violation of § 13–421 A.R.S.". If he desired further details, he could have sought a bill of particulars to supply them. Rule 116, Rules of Criminal Procedure, 17 A.R.S. (1956); State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965).

Defendant claims that the Court abused its discretion in denying a motion for continuance of the trial date setting of February 23, 1967. The motion for continuance was on the grounds that defendant had not as yet been able to find certain alibi witnesses. The defendant had given notice of his intention to claim the defense of alibi which notice was filed in the Court on October 18, 1966. In the notice he had named four persons, listing their whereabouts as University of Oregon, Eugene,

Oregon; University of Miami, Miami, Florida; University of Syracuse, Syracuse, New York; and University of Arizona, Tucson, Arizona. It further appears in the record that the defendant was represented by counsel throughout the entire proceedings, including the preliminary hearing. However, he was represented by the public defender at the preliminary hearing, and upon his arraignment the court appointed an attorney. The trial at that time was set for October 6, 1966. The court-appointed attorney secured a resetting of the case to October 20th and thereafter filed a motion to withdraw as counsel on the ground that defendant:

"insists on writing numerous letters (special delivery) to this attorney in which he tells this attorney how to prepare and try the case. There seems to be a personality conflict between this attorney and the defendant, Jesse Ray Maxwell, and a difference of opinion as to how this case should be prepared for trial."

The time for hearing the motion to withdraw was set for November 1, 1966, and on that date the motion was heard and the case was reset for trial on December 14, 1966. On November 21st the motion to withdraw was granted and a new attorney was appointed. The case was continued to January 23, 1967. A motion for a hearing pursuant to Rule 250 was granted at a hearing held on January 18, 1967 and the trial date of January 23rd vacated and thereafter reset for February 23, 1967.

■ From the record it is apparent that from the time the defendant gave notice of his intention to claim alibi and stated the names of the witnesses whom he desired to call and their apparent whereabouts, he had four months in which to attempt to find these witnesses. There is no showing of any kind in the record that he exercised diligence in trying to locate these witnesses. Nor is there any showing that if the case were continued it was reasonable to believe the witnesses would be available. Under such circumstances we cannot see

that the trial court abused its discretion in refusing to grant defendant's motion for continuance of the trial setting of February 23, 1967.

Regarding the claim that the evidence was insufficient to sustain the verdict, the facts viewed in the light most favorable to sustaining the verdict of the jury are as follows: Certain blank checks were stolen from the office of the complaining witness Meza. The appellant had the opportunity to steal these blank checks when he was in the office at Meza's place of business. Defendant presented one of these checks to an employee of Safeway Stores. The check bore the name of Meza as maker, but Meza did not sign the check and gave no one permission to sign his name on it, nor did he ever give any check to the defendant. Defendant received twenty-eight ten dollar bills in exchange for the check. He presented a driver's license to the employee of Safeway Stores to identify himself as payee of the check, and a short time later the same day he paid an obligation to Harry Willer with twenty-four ten dollar bills.

Defendant did not deny cashing the check, but claimed that it had been given to him by Meza. Meza denied that he had signed the check or that he had given the defendant the check. There was sufficient evidence to sustain the charge of forgery and the jury resolved the conflict against the defendant.

The misconduct alleged on the part of the county attorney was that he referred to the defendant as a "bouncer" or a "stiff" and cross-examined the defendant at length about the methods banks used in honoring checks, when the defendant knew nothing about bank methods.

Defendant had testified that Meza had offered him employment as a "part-time bouncer". The cross-examination on this point was as follows:

"Q. Now, did you work for the Melody Lounge?

"A. Yes, I did, part-time.

"Q. And what did you do? Bouncer, like you said. You were a stiff, or whatever you call it?

"A. Well, on Thursdays, and Wednesday nights I would go into the Bar, they was having trouble with the young kids, trying to get into the Bar, causing trouble with the clientele leaving the Bar. Mr. Meza was not present. He asked me if I would come to work on them two nights."

The cross-examination was not extensive. The defendant admitted having been convicted of a forgery in Arizona in January of 1963.

The testimony then was as follows:

"Q. That involved checks, didn't it?

"A. It involved a forged instrument.

"Q. So you know a little bit about it?

"A. Just what they convicted me of.

"Q. And were you convicted of drawing checks on no account on the second of March, 1964?

"A. Yes.

"Q. That was in Arizona, too, wasn't it?

"A. Yes, it was.

"Q. And you knew a little something about checks then, didn't you?

"A. Well,—

"Q. Let's put it this way. You knew they came from banks, and the banks entered checks—"

At this point defense counsel objected and moved for a mistrial on the ground that the cross-examination had gone beyond limits. The court denied the motion and the last question was not pursued further. We find nothing to indicate that the court abused its discretion in doing so.

With regard to the motion for new trial, the defendant alleged as grounds that the verdict was contrary to the weight of the evidence; (1) that there was new and material evidence which if introduced at the trial would probably have changed the verdict or the finding of the Court and could not have been discovered with reasonable diligence by the defendant and produced upon the trial; (2) misconduct on the part of the county attorney; (3) errors committed by the Court, and (4) that the defendant did not receive a fair trial.

We have discussed all of these matters except the ground of newly discovered evidence. There is nothing to indicate what this newly discovered evidence might be. Defendant's counsel on appeal indicates that a subpoena was issued for one Peters, a special agent of the Federal Bureau of Investigation to bring in certain records of his activities on July 14, 1966, the date of the passing of the forged check. The subpoena was not issued or served until after the trial, and was quashed on the motion of the United State District Attorney on the ground that it was contrary to Federal regulations to produce such information without permission of the Attorney General of the United States. In any event, it is highly speculative what this witness or his records might have shown.

■ There is also an affidavit by an attorney stating that defendant was in his office consulting him on a legal matter sometime after 5:30 P.M. or in any event subsequent to 5:00 P.M. There was evidence in the case that the defendant had bought a car from the witness Harry Willer and paid for it with ten dollar bills and that this transaction took place prior to six o'clock. We cannot see that the Court abused its discretion in denying the motion for new trial under such circumstances.

Finding no prejudicial error, the judgment is therefore affirmed.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.