510 P.2d 405

**The STATE of Arizona, Appellant,**

v.

**David CARTWRIGHT, Appellee.**

**No. I CA–CR 513.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 31, 1973.

Rehearing Denied July 3, 1973.

Review Denied Sept. 18, 1973.

Moise Berger, Maricopa County Atty. by Jerry L. Stejskal, Deputy County Atty., Phoenix, for appellant.

Gerald F. Sullivan, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

The defendant-appellee, David Cartwright, was indicted by the Maricopa County Grand Jury on three counts of violating A.R.S. § 13–440, Wagering on Sporting Events. These counts arose from occurrences which allegedly took place on the 17th, 18th, and 24th of October 1971.

Prior to the date of the scheduled trial, defendant filed a "Motion to Dismiss Indictment", claiming A.R.S. § 13–440 was unconstitutionally vague and indefinite and did not adequately charge him with having committed a crime.

Defendant also filed a "Motion to Quash Indictment", raising the dual issue of whether the indictment was definite enough to charge him with having committed a crime, and whether A.R.S. § 13–440, as worded, creates a continuing crime for which there can be only a one-count prosecution. Defendant contended that he could be charged with only one count at most, and that the only action the trial court could take would be to dismiss all three counts so that the matter could be resubmitted to the grand jury to issue a one-count indictment.

Defendant also moved for a bill of particulars, requesting answers to several questions, including the following: The times during the three dates in October when the alleged acts took place, the nature of the illegal activity alleged against him, the means employed by him in accepting the wagers, the parties for whom he allegedly registered the illegal wagers, and whether the State employed a telephone wiretap to gather evidence against him. The trial court granted defendant's motion. Pursuant to the court order, the County Attorney filed his bill of particulars, stating, among other matters: The approximate times on the dates aforementioned when the alleged acceptances of the wagers were made; defendant's role was to accept the wagers placed; the wagers were verbally transacted; the first names of the parties with whom the bets were registered; football games were the events that were wagered upon; the amounts of the purported wagers made with the defendant, also naming the football teams and the point spreads in two of the three incidents, with a statement that a copy of a report of the third incident would be furnished to defense counsel; and that the State did employ a wiretap, stating the telephone numbers tapped, and stating that the taps were authorized pursuant to an order signed by Judge Harold Martin.

After having initially granted the motion for a bill of particulars, the trial court denied defendant's "Motion to Dismiss", but granted his "Motion to Quash Indictment."

The State of Arizona as appellant raises the following questions for review:

1. Whether phrasing a count in an indictment in the language of the applicable statute is sufficient to resist quashing the indictment;

2. Whether A.R.S. § 13–440 sanctions only one continuing crime for which only one count for violating the statute may be charged, or whether multiple counts may be charged.

It is to be noted that no issue has been raised on appeal as to the constitutionality of A.R.S. § 13–440.

## I. WAS THE INDICTMENT SUFFICIENT TO CHARGE THE DEFENDANT WITH A CRIMINAL OFFENSE?

A.R.S. § 13–440, subsec. A provides as follows:

". . . [N]o person may *engage* for gain, hire, reward or profit *in the business* of accepting, recording or registering any bet, purported bet, wager or purported wager or *engage* for gain, hire, reward or profit *in the business* of selling wagering pools or purported wagering pools with respect to the result or purported result of any sporting event, contest or other game of skill or chance of any other unknown or contingent future event or occurrence whatsoever." (emphasis added) Added Laws, 1971, Chapter 130, § 2.

Each of the counts in the indictment was set out in essentially the same language except, of course, for the different dates in October when the alleged violations took place. Count III, for example, was phrased as follows:

"That on or about the 24th day of October, 1971, in Maricopa County, Arizona, and before the bringing of this indictment, the said DAVID CARTWRIGHT, engaged for gain, hire, reward or profit in the business of accepting, recording, or registering any bet, purported bet, wager or purported wager, with respect to the result or purported result of any sporting event, contest or other game of skill or chance or any other unknown or contingent future event or occurrence whatsoever, all in violation of A.R.S. Sec. 13–440 as amended 1971."

The phraseology of the statute and the phraseology of Count III are substantially the same.

The State argues, in essence, that each count of the indictment was specific enough to have sufficiently notified defendant of the nature and cause of the accusations against him, because the counts were couched in the language of the applicable statute, A.R.S. § 13–440, and thus in accordance with the method of charging an offense as set out in Rule 115, Ariz.R. Crim.P., 17 A.R.S.

The Arizona Supreme Court has on several occasions passed upon the question of the degree of specificity with which a purported crime must be alleged. In State v. Suarez, 106 Ariz. 62, 470 P.2d 675 (1970), the court established the substantive test as follows:

"This Court has previously held that an information is legally sufficient if it fairly indicates the crime charged; states the essential elements of the alleged crime; and is sufficiently definite to apprise the defendant so that he can prepare his defense to the charge. State v. Maxwell, 103 Ariz. 478, 445 P.2d 837 (1968). The test of a sufficiency of an information is whether in a subsequent prosecution for the unlawful act described in the information the defendant could plead the information as a bar. State v. Kuhnley, 74 Ariz. 10, 15, 242 P. 2d 843 (1952). Furthermore, an information is sufficient if the offense is set forth in such a manner that a person of common understanding would know what was intended. State v. Terrell, 103 Ariz. 453, 445 P.2d 429 (1968)." 106 Ariz. at 64, 470 P.2d at 677.

Specifically, in State v. Miller, 100 Ariz. 288, 297, 413 P.2d 757, 763 (1966), the Arizona Supreme Court in finding that an indictment was not defective, stated: ". . . an *indictment or information* in the language of the statute is sufficient." (emphasis added) *See also*, State v. Martin, 105 Ariz. 265, 463 P.2d 63 (1969).

Although the manner in which the counts were phrased does not depict a model of legal draftsmanship, our Supreme Court has found that language would be constitutionally sufficient to apprise a defendant of the charges against him. Quite

clearly then, the trial court was in error to have granted the "Motion to Quash Indictment."

An abbreviated information or indictment, such as we have here, can be cured by a bill of particulars. State v. Martin, supra; State v. Burgess, 82 Ariz. 200, 310 P.2d 822 (1957); State v. Cutshaw, 7 Ariz.App. 210, 437 P.2d 962 (1968). *See also,* Rule 116(A), Ariz.R.Crim.P., 17 A. R.S. The proper course of action in the case at bar would have been for the trial court to have denied defendant's "Motion to Quash", in conjunction with its correct decision to grant defendant's motion for a bill of particulars.

## II. DOES A.R.S. § 13–440 PROSCRIBE BUT ONE CONTINUING CRIME OR THE POSSIBILITY OF SEVERAL CRIMES?

Both parties agree that the answer to the above question turns on the manner of statutory construction and legislative intent as to the emphasized words "engaged . . . in the business" in the statute previously quoted in this opinion. The statute itself does not define what that phrase means.

Defendant contends that the intent of the legislature was that the statute creates a single continuing crime, that crime being the illegal operation of a gambling establishment. The State's position is that the legislature inserted the words "engaged . . . in the business" in order to differentiate between the so-called friendly type bet and the bet made with one, for instance, in the "bookmaking" business. If one engages in the activity of accepting, recording or registering a bet socially, no crime has been committed. The State argues that if he does so because it is his business, then a crime has been committed.

Although there have been Arizona decisions involving other gaming statutes, see infra, there have been none specifically interpreting the meaning of A.R.S. § 13–440.

We have therefore examined case law from other jurisdictions for guidance in this matter.

There are several federal appellate cases which have interpreted the phrase "in the business" in situations involving similar statutes which have imposed a tax on gamblers. In United States v. Simon, 241 F.2d 308 (7th Cir. 1957), the defendant was convicted of violating 26 U.S.C.A. § 3285(d) which imposed a tax on a person engaged in the business of accepting wagers. The Court of Appeals for the 7th Circuit, in affirming the conviction, gave the following interpretation to the phrase "engaged in the business":

"*. . . The purpose of the language 'engaged in the business of accepting wagers' was to exclude from coverage of the Act only bets of the 'purely "social" or "friendly type." '* There is no indication that any other type of wager was excluded. Conversely, the language was intended to include wagers accepted by a principal on his own account, irrespective of whether he was primarily or only incidentally engaged in the acceptance of wagers." (emphasis added). 241 F.2d at 310

In Kahn v. United States, 251 F.2d 160 (9th Cir. 1958), the court stated:

"Though the statutes involved in this appeal are not relatively new, and 'engaged in business' is not fully defined as used in them, there is no reason to believe that the definition in relation to the acceptance of wagers should vary greatly from the construction of that phrase as used in other revenue statutes. These definitions have attributed such elements to the 'carrying on' or 'engaging in' a business, *as* intent, profit, consumption of time, occupation of intention, etc., but have not found any of these items to be completely controlling over all the other elements." 251 F.2d at 162. (emphasis theirs)

The minutes of the April 6, 1971 meeting of the Arizona House Committee on Ways

& Means state the following: "House Bill 337 [now A.R.S. § 13–440], racing wagering restrictions. Mr. Gary Nelson, Attorney General, stated that this bill would prohibit bookmaking establishments", i. e., those establishments created to carry on the *business* of illegal bookmaking activities.

■ From the above, we believe the intent of the legislature was that "engaged . . . in the business" of accepting wagers distinguishes or classifies whom the statute does or does not apply to, and that its applicability does not depend upon the acceptance, etc. of wagers being made over a period of time.

■ There are also a number of cases where the courts have specifically rejected contentions made by the defendants that certain statutes, similar in nature and import to the statute under scrutiny in the case *sub judice,* provide that only one count could be charged. We agree with the reasoning in those cases, some of which are set out below.

In Sagansky v. United States, 358 F.2d 195 (1st Cir. 1966), cert. denied, 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966), the defendant was charged in five counts with knowingly using wire communication facilities for transmission of wagers in interstate commerce. The counts stemmed from five separate occurrences when the defendant allegedly committed the offenses. The court there found:

". . . If a defendant is professionally engaged in making bets and wagers, one single use of interstate facilities is an offense." (emphasis added) 358 F.2d at 201

*Cf.* United States v. Sklaroff, 323 F.Supp. 296 (S.D.Fla.1971).

In Katz v. United States, 369 F.2d 130 (9th Cir. 1966), later reversed on other grounds, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the defendant was charged in eight counts of violating 18 U.S.C.A. § 1084. There, the court said:

"That statute proscribes the interstate transmission by wire communication of bets or wagers, or information assisting in the placing of bets or wagers by a person engaged in the business of betting or wagering. *Each count involved a violation on a different date or at different times on the same date.* Appellant waived a jury. The district judge found appellant guilty on all counts. 369 F.2d at 131.

\* \* \* \* \* \*

"Counsel argues that there was a single violation under the statute, 18 U.S.C. § 1084. This is not borne out by the record as we view it. *Each call was a separate act of the defendant in using the telephone and would constitute a separate and distinct offense."* (emphasis added) 369 F.2d at 135

Further, the court in State v. Donovan, 97 N.H. 190, 84 A.2d 405 (1951), said:

"One of the information charges that the respondent on or about May 6, 1950, conducted a pretended lottery in that he accepted $10 from Attilio Romano as a wager on certain specified horse races. The complaint tried October 10, marked dismissed by the Court, charged that he conducted a pretended lottery on or about May 6, 1950, in that he accepted $3 from the same Romano as a wager on an unspecified horse race. *If the respondent accepted on the same day from the same person different wagers on the result of different horse races, each wager accepted would constitute the conduct of a separate lottery or pretended lottery and would be a separate and distinct offense. . ."* (emphasis added) 84 A.2d at 407

*See also,* Johnson v. Commonwealth, 201 Ky. 314, 256 S.W. 388 (1923), wherein the court found that each separate hand at stud poker was a separate offense and that a conviction of one hand did not bar prosecution for another hand. *See,* Annot., 35 A.L.R. 89 (1925).

There are at least two earlier Arizona Supreme Court cases wherein the court inferentially found that a defendant could be prosecuted for, and found guilty of, multiple counts of what is generally called a "gaming statute", similar to the statute in the instant case.

In State v. Pelosi, 68 Ariz. 51, 199 P.2d 125 (1948), later overruled on other grounds in State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963), the defendants appealed their convictions of having violated Ch. 85, Session Laws 1945 (§ 73–1607a, Cum. Pocket Supp.Ariz.Code 1939), a statute making betting on a horse race illegal. The defendants had been jointly charged in 30 separate counts for alleged illegal bookmaking activities. Each count was based upon *single, separate* acceptances of wagers on horse races. In resolving the constitutional issues involved, and in affirming the convictions, the court found that each illegal wager could constitute a separate crime.

In State v. Deckter, 73 Ariz. 427, 242 P.2d 551 (1952), the defendant was charged with two counts of having "engaged in bookmaking and/or wagering and/or betting upon the results of a horse race." In affirming the two convictions, the Supreme Court implicitly found that each separate wager could be the basis of a separate count. Likewise, we feel that in this context each separate acceptance, recording and registering of a bet or purported bet, whether made on one occasion or during several occasions, by one professionally engaged in the business of "bookmaking" constitutes a separate offense under A.R.S. § 13–440.

The judgment of the trial court is reversed and the trial court is hereby directed to reinstate the grand jury indictment against the defendant, David Cartwright, for further proceedings not inconsistent with this opinion.

Reversed with directions.

OGG, J., concurs.

STEVENS, Judge (specially concurring).

I entertain serious doubts as to whether the indictment states a public offense even though it follows the language of the statute. On the other hand, the indictment plus the bill of particulars does state a public offense, and under these circumstances I concur.