(No. 60560.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT DUGAN *et al.*, Appellees.

*Opinion filed September 20, 1985.—Rehearing denied December 2, 1985.*

MORAN, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and David E. Bindi, Assistant Attorneys General, of Chicago, of counsel), for the People.

Patrick A. Tuite and Mary L. Mikva, of the Law Offices of Patrick A. Tuite, Ltd., of Chicago (Scott Pearlstone, law student), for appellees.

JUSTICE MILLER delivered the opinion of the court:

Following a bench trial in the circuit court of Lake County, the defendants were convicted of syndicated gambling stemming from their operation of a private club where patrons bet on card and dice games. In a sep-

arate civil proceeding, the court ordered the forfeiture of an automobile owned by a defendant and involved in the gambling activities. The appeals of those judgments were consolidated. The appellate court reversed the defendants' convictions because there was no evidence that the players' bets were recorded; the court affirmed the order for the forfeiture of the automobile. (125 Ill. App. 3d 820.) We allowed the State's petition for leave to appeal (94 Ill. 2d R. 315(a)), and that brought before us an attack on the forfeiture order as well (see 87 Ill. 2d R. 318(a)).

An undercover investigation of several months' duration by the Illinois Department of Law Enforcement culminated in a raid of the Northern Illinois Fin and Tail Feather Club on September 10, 1982. The club occupied rented quarters in the basement of a restaurant near Grayslake and was operated in the manner of a casino. Six undercover agents were present the night of the raid. Arriving at the club in pairs, the agents purchased chips and then proceeded to gamble on games of blackjack and craps. The defendants were performing various functions. Robert Dugan and Norman Roberts supervised matters, and Bill Anagnostara acted as doorman; the six remaining defendants—Trina Brie, Edward Kahn, Peter Lambiris, Barbara Miller, James Siegal, and Sharon Skelton—handled duties such as selling chips, dealing cards, and operating the dice games. At about 11 p.m. one of the agents left the club briefly on the pretext of retrieving something from her car. She returned with a group of law-enforcement officers, who secured the premises and arrested the defendants. Numerous items of evidence were seized, including tables, chips, decks of cards, and dice.

The defendants later were indicted and convicted for syndicated gambling, a violation of section 28—1.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par.

28—1.1), and sentenced to various dispositions. Section 28—1.1(b) provides:

"A person commits syndicated gambling when he operates a 'policy game' or engages in the business of bookmaking." (Ill. Rev. Stat. 1981, ch, 38, par. 28—1.1(b).)

The basis here for the charge of syndicated gambling was bookmaking, defined in section 28—1.1(d) as follows:

"A person engages in bookmaking when he receives or accepts more than five bets or wagers upon the results of any trials or contests of skill, speed or power of endurance or upon any lot, chance, casualty, unknown or contingent event whatsoever, which bets or wagers shall be of such size that the total of the amounts of money paid or promised to be paid to such bookmaker on account thereof shall exceed $2,000. Bookmaking is the receiving or accepting of such bets or wagers regardless of the form or manner in which the bookmaker records them." Ill. Rev. Stat. 1981, ch. 38, par. 28—1.1(d).

The appellate court rejected the defendants' argument that their conduct here, playing card and dice games for money, could not be bookmaking as defined by statute. A majority of the court agreed with the defendants, however, that making or keeping a record of the bets or wagers was an additional element of the offense, which was not satisfied by the use of chips as memorials; accordingly, the court reversed the convictions. The dissenting justice believed that the statute did not require that the wagers be recorded and therefore would have affirmed the convictions. With respect to the forfeiture proceeding, the court affirmed the forfeiture order, finding sufficient evidence that the car had been used in illegal gambling activity with knowledge and consent of its owner.

A major aspect of this appeal concerns the extent to which the current statutory definition of "bookmaking," the activity that underlies the defendants' convictions for syndicated gambling, departs from previous uses of the

term. The defendants maintain that bookmaking occurs when a wager is made on an event such as a horse race or sports contest in which neither the bettor nor the bookmaker is a participant. That is the more familiar situation found in prosecutions for syndicated gambling based on bookmaking (see, *e.g., People v. Caffrey* (1983), 97 Ill. 2d 526 (football and basketball games); *People v. Miller* (1984), 128 Ill. App. 3d 574 (horse races and baseball and football games); *People v. Greenman* (1976), 38 Ill. App. 3d 734 (sporting events)), and the defendants suggest that playing card or dice games for money, the extent of their activity here, did not constitute bookmaking but rather gambling (see Ill. Rev. Stat. 1981, ch. 38, par. 28—1(a)(1) ("[p]lays a game of chance or skill for money or other thing of value")).

The definition of "bookmaking" found in section 28—1.1(d) is broad enough to include the defendants' conduct here. The statute applies to "bets or wagers upon the result of any trials or contests of skill, speed or power of endurance or upon any lot, chance, casualty, unknown or contingent event whatsoever" and does not contain the limitation suggested by the defendants. The appellate court correctly held that the bookmaking provision could apply here, where the bettor and the bookmaker were participants in the contest on which the wager was laid.

The appellate court reversed the defendants' convictions because there was no proof of any method by which the players' bets had been recorded. The court found the requirement of a recording expressed in the second sentence of the bookmaking definition, which says, "Bookmaking is the receiving or accepting of such bets or wagers regardless of the form or manner in which the bookmaker records them" (Ill. Rev. Stat. 1981, ch. 38, par. 28—1.1(d)), and rejected the State's theory that the use of chips at the club constituted a sufficient form of record keeping. In support of the appel-

14

late court's interpretation of the provision, the defendants point to the legislature's continued use of the term "bookmaking," which, they contend, traditionally has required some form of recording (see *People v. Lloyd* (1954), 3 Ill. App. 2d 257, 257*l*; 38 Am. Jur. 2d *Gambling* sec. 50 (1968)).

The current statute is quite different from that in effect when *Lloyd* was decided. At that time, bookmaking was defined in terms of making or keeping a book for registering bets (Ill. Rev. Stat. 1953, ch. 38, par. 336). That was the basis for the charge in *Lloyd*, but the evidence presented at trial there showed only that the defendant had received a $20 bill and a piece of paper on which the bettor had written the name of a horse and the number and day of a race. Accordingly, the appellate court reversed Lloyd's conviction because there was no evidence that the defendant himself ever kept or made a record or registry of bets.

As set out now in section 28—1.1(d), the gravamen of the offense of bookmaking is the acceptance or receipt of more than five bets or wagers totaling more than $2,000. The legislature assumed that a bookmaker, defined as one who accepts or receives more than five bets or wagers totaling more than $2,000, would find it necessary to make some sort of record of the activity; in providing that the manner or form in which that was done was irrelevant, the legislature did not make record keeping an element of the offense. The making or keeping of a record of bets or wagers is prohibited elsewhere: section 28—1(a)(5) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 28—1(a)(5)) provides that a person commits gambling when he "[k]nowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered." We conclude that the language contained in section 28—1.1(d) that defines the offense of

"bookmaking" eliminates rather than perpetuates record keeping as an element of the offense.

The defendants advance two other arguments, which the appellate court did not address in light of its decision reversing the convictions. First, the defendants contend that the word "business," as it is used in section 28—1.1(b), "[a] person commits syndicated gambling when he operates a 'policy game' or engages in the business of bookmaking," expresses an additional element of the offense. The defendants construe the word in its sense of an occupation or activity from which one seeks to derive a livelihood or profit and argue that this aspect of the offense was not proved here. We do not interpret the provision as containing a separate element apart from those set forth in the definition of bookmaking in section 28—1.1(d)—the "business of bookmaking" would be shown by proof of more than five bets or wagers totaling more than $2,000, the threshold for application of the provision.

The other contention that the appellate court did not address concerns due process. The defendants argue that the terms of the statute are so vague and uncertain that it did not provide adequate notice that their conduct fell within its scope. (See *Connally v. General Construction Co.* (1926), 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126.) It should be clear from what we have already said, however, that the statute, by its terms, prohibited the defendants' activity. The defendants had notice that their conduct constituted syndicated gambling, as charged and proved here. (See *People v. Caffrey* (1983), 97 Ill. 2d 526 (as applied to the defendant there, the bookmaking provision was not unconstitutionally vague for failing to prescribe a period of time within which the conduct must occur).) Also, the defendants make the different argument that applying the provision to their conduct here unforeseeably expands the scope of the statute and

therefore is a construction that cannot be applied retroactively to them. (See *Bouie v. Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697.) Our decision has not enlarged the plain meaning of the statute and does not have that effect.

Finally, the defendants attack the forfeiture of the automobile, identified as a 1977 two-door Cadillac Coupe de Ville, VIN 6D47S7Q317777. The car was seized by authorities in the parking lot outside the Northern Illinois Fin and Tail Feather Club following the raid there. Inside the car were club membership cards, a large amount of cash, and gambling paraphernalia, including decks of cards and chips. In the complaint for forfeiture the State alleged the use of the car in the commission of a gambling offense on or about September 11, 1982. Notice of the proceeding was directed both to Sandra Martinez, in whose name the car's title was registered, and to Robert Dugan. Following a hearing, the circuit court found that Robert Dugan was the owner of the car and that it had been used in the commission of a gambling offense. The court ordered the car forfeited. That was affirmed by the appellate court.

We need not resolve the initial argument that the forfeiture order could not survive the appellate court's reversal of the convictions for syndicated gambling, for we have determined that the convictions must stand; we note, though, that that argument has been rejected previously (see *People ex rel. Hanrahan v. One 1965 Oldsmobile* (1972), 52 Ill. 2d 37, *rev'd on other grounds sub nom. Robinson v. Hanrahan* (1972), 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30 (*per curiam*)). It is also argued that forfeiture was inappropriate here because there was no evidence that the car was used in the commission of an offense, and because title to the car was held by Sandra Martinez, who did not know about and consent to the illegal use of the car.

Forfeiture is a civil proceeding *in rem*. Section 36—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 36—2) provides:

"The State shall show at such hearing by a preponderance of the evidence, that such vessel, vehicle or aircraft was used in the commission of an offense described in Section 36—1. The owner of such vessel, vehicle or aircraft or any person whose right, title, or interest is of record as described in Section 36—1, may show by a preponderance of the evidence that he did not know, and did not have reason to know, that the vessel, vehicle or aircraft was to be used in the commission of such an offense or that any of the exceptions set forth in Section 36—3 are applicable. Unless the State shall make such showing, the Court shall order such vessel, vehicle or aircraft released to the owner."

The exceptions in section 36—3 pertain to vessels, vehicles, and aircraft that are used by common carriers or that, for example, have been stolen (Ill. Rev. Stat. 1981, ch. 38, par. 36—3); also, protection is afforded to certain lienholders and secured parties (Ill. Rev. Stat. 1981, ch. 38, par. 36—1a). None of these special provisions have been urged here.

It is argued that the car was not shown to have been used in the commission of an offense. It is contended that the car was used, at most, as a repository for money that had been gambled. The offense alleged in the forfeiture complaint was gambling rather than syndicated gambling; apparently that was done because the one section and not the other is included in the list of offenses for which a vehicle may be seized and forfeited (see Ill. Rev. Stat. 1981, ch. 38, par. 36—1).

At the hearing, testimony was introduced regarding the contents of the car at the time it was seized. It was found to contain, among other things, membership cards for the club, playing cards, poker chips of different colors, gambling table covers, and $30,000 in cash. Included

in that sum was $700 that had been gambled by agents at the club the night the car was seized. The circuit judge's conclusion that the car was used in the commission of a gambling offense is not against the manifest weight of the evidence. The use of the car as a mobile office or safe was sufficiently connected to the gambling activity, and therefore it may be considered to have been used in the commission of the offense.

It is also argued that Sandra Martinez, not Robert Dugan, was the owner of the car. Briefly, the evidence presented at the hearing on the complaint for forfeiture showed that on August 9, 1982, Robert Dugan went to a car dealer, took the car in question for a test drive, and gave the salesman a down payment of $500. The next day Dugan returned and paid the balance of the purchase price, $5,011, and gave the salesman an application for license and registration bearing the name of Sandra Martinez. Later, Dugan brought the car back for repair. The salesman never saw Martinez. Also during August, Dugan was seen with the car at his home by officers conducting surveillance. Martinez explained that Dugan, acting on her behalf, found the car. She paid him a total of $5,500 from her savings, which, she said, she kept at home and not in a bank. She was not employed at the time of the purchase, and in the preceding year had earned $10,000 as a dental technician. Martinez insured the Cadillac along with another vehicle, and at the hearing she produced a declaration of coverage to that effect from an insurance company. Dugan, following his arrest, told the police that the car was his. Later, he explained it was borrowed.

The circuit court's finding that Dugan was the owner of the car was not against the manifest weight of the evidence. That title was in Martinez' name is not dispositive; the statute contemplates that ownership may not necessarily be identified with the person in whose name

the title is registered. Title to and ownership of a car may coincide in the same person (see, *e.g.,* *People v. One 1978 Mazda* (1983), 115 Ill. App. 3d 187; *People ex rel. Carey v. 1976 Chevrolet Van* (1979), 72 Ill. App. 3d 758), but we do not believe that that must always be the case. Here, the evidence supports the conclusion that the registration of title in Martinez' name was a pretense and that Dugan was actually the owner of the vehicle.

For the reasons stated, we affirm that part of the appellate court's judgment pertaining to the forfeiture order and reverse that part of the judgment reversing the defendants' convictions. The circuit court's judgments are affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

JUSTICE MORAN took no part in the consideration or decision of this case.