727 P.2d 316
STATE of Arizona, Appellant,

v.

Edward Francis DUCI, Robert Lewis Amuso, Michael Aaron Zemel, Charles Edward Keenan, Robert Clarence Graham, Helen Elaine Ryan, Carol Aanenson, Vincent Paul Snyder, Appellees.

STATE of Arizona, ex rel. Robert K. CORBIN, Attorney General, Plaintiffs-Appellants,

v.

Edward Francis DUCI and Alice Duci, his wife; Robert Lewis Amuso aka "Fat Louie" and Joan F. Amuso, his wife; Carol Ann Aanenson; Robert Clarence Graham and Ralphalita Graham, his wife; Charles Edward Keenan; Helen Elaine Ryan and Robert Ryan, her husband; Vincent Paul Snyder aka "Mooney" and Jane Doe Snyder, his wife; Michael Aaron Zemel; One Thousand and Ten Dollars U.S. Currency; Three Hundred Dollars U.S. Currency; and One Lot Gambling Equipment; John/Jane Does 1–20; XYZ Enterprises 1–10; ABC Corporation 1–10, Defendants-Appellees.

Nos. CR 86 0032–PR, CV 860097–PR.

Supreme Court of Arizona.

Sept. 30, 1986.

Robert K. Corbin, Atty. Gen. by Robert K. Corbin, Cameron H. Holmes, Asst. Attys. Gen., Thomas E. Collins, Maricopa Co. Atty. by Sandra L. Janzen, Phoenix, for State of Ariz.

Michael J. Dew, Phoenix, for appellees Duci, Amuso, Keenan, Aanenson and Snyder.

David W. Engelman, Phoenix, for appellee Graham.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellee Zemel (criminal action only).

Michael Aaron Zemel, pro. per. (civil action).

FELDMAN, Justice.

Appellees, defendants below, allegedly organized at least 45 poker games in Arizona between October 1983 and July 1984. Defendants were indicted criminally under A.R.S. § 13–3307 for engaging in the business of accepting bets or wagers or setting up gambling pools on the "result of any game of skill or chance." A.R.S. § 13–3307(A). In addition, the state filed a civil RICO suit alleging gambling as the predicate offense. A.R.S. §§ 13–2301(D), 13–2314 (Supp.1985). The trial court dismissed the criminal indictment on the grounds that the defendants' conduct fell within A.R.S. § 13–3301, rather than § 13–3307, which the court characterized as a bookmaking statute. Because violation of A.R.S. § 13–3301 is a misdemeanor and civil RICO claims require predicate offenses "punishable by imprisonment for more than one year," A.R.S. § 13–2301(D)(4), the state's RICO complaint also was dismissed. The court of appeals affirmed the trial courts' dismissals on other grounds. *State v. Duci*, No. 1 CA–CIV 8270 (Ariz.Ct.App. Jan. 14, 1986) (memorandum decision); *State v. Duci*, No. 1 CA–CR 8786 (Ariz.Ct. App. Dec. 26, 1985) (memorandum decision). We consolidated the cases and granted review to clarify the meaning of A.R.S. § 13–3307. Rule 31.19(c)(4), Ariz.R. Crim.P., 17 A.R.S. (Supp.1985). We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS

The state alleges that Edward Duci, Robert Lewis ("Fat Louie") Amuso, Carol Ann Aanenson, Robert Clarence Graham, Charles Edward Keenan, Helen Elaine Ryan, Vincent Paul ("Mooney") Snyder, and Michael Aaron Zemel (defendants) conducted casino poker games at several locations from October 1983 to July 1984.

Some of the games were conducted by a single defendant while others were conducted by two or more defendants. Defendants solicited players for their games, provided cards and regulation poker tables, and acted as dealers and bankers. Defendants also provided free drinks and cigarettes to all participants. Most of the games were held in apartments rented by defendants and apparently used only as locations for defendants' games. The games were moved to new locations every two or three months. In return for their services, defendants took ten percent of each pot up to a maximum of $3. Only those defendants actually running a given game shared in the profits from that game. Based on a ledger seized from one of the defendants, the state estimates that the games generated approximately $150,000 in profits for the operators. There is no record of the profits, if any, realized by the participants.

## DISCUSSION

1. *Issues*

Like *State v. American Holiday Ass'n*, 151 Ariz. 312, 727 P.2d 807 (1986), this case requires us to consider the scope of A.R.S. § 13–3307(A). In pertinent part, A.R.S. § 13–3307(A) provides that

> no person may engage for a fee ... in the business of accepting ... any bet [or] wager or engage for a fee in the business of selling wagering pools ... with respect to the result ... of any ... game of skill or chance....[1]

The statute contains four elements relevant to this case. The state must prove that defendants (1) for a fee (2) engaged in the business (3) of accepting bets or wagers or selling wagering pools (4) on the results of games of skill or chance. Defendants concede, as they must, that ele-

---

1. The full text of A.R.S. § 13–3307(A) provides: Subject to the exceptions contained in § 5–112, no person may engage for a fee, property, salary or reward in the business of accepting, recording or registering any bet, purported bet, wager or purported wager or engage for a fee, property, salary or reward in the business of selling wagering pools or purported wagering pools with respect to the result or purported result of any race, sporting event, contest or other game of skill or chance or any other unknown or contingent future event or occurrence whatsoever.

ments 1, 2, and 4 are satisfied. The only question is whether taking a percentage of each pot in exchange for dealing and setting up the games satisfies the element of accepting bets or selling wagering pools.

Defendants do not seriously dispute that the participants in their poker games were *placing* bets. As we stated in *American Holiday*, "a bet is a situation in which the money or prize belongs to the persons posting it, each of whom has a chance to win it." 151 Ariz. at 315, 727 P.2d at 810. Defendants concede this point but argue that they were not "accepting" the bets for two reasons: first, A.R.S. § 13–3307 is a bookmaking statute and casino poker games are not, defendants assert, bookmaking operations; and second, A.R.S. § 13–3301 specifically covers defendants' conduct. The court of appeals based its decision on a third argument—that defendants were not "accepting" bets because they did not personally participate in the poker games. We address each of these arguments in turn.

### 2. *The Scope of A.R.S. § 13–3307*

In *American Holiday, supra,* we read A.R.S. § 13–3307's legislative history as suggesting that professional bookmaking operations were the legislature's primary target in enacting A.R.S. § 13–440, the predecessor to A.R.S. § 13–3307. *American Holiday*, 151 Ariz. at 316–317, 727 P.2d at 811–812. We held that the absence of any stated broad legislative objective supported narrowing the interpretation of the statutory terms "bet or wager" to exclude "entrance fees charged by the sponsor of a contest to participants competing for prizes." *Id.* 151 Ariz. at 315, 727 P.2d at 810–811.

■ The absence of broad legislative objectives underlying A.R.S. § 13–3307 may justify narrow interpretations of the statute in other situations unlike that under review in *American Holiday*. However, we need not define the precise reach of A.R.S. § 13–3307 in this case because we

believe that defendants' conduct is covered even under a restrictive view of the statute.

First, defendants' poker games closely resemble classic bookmaking operations. A bookie takes bets on the results of some contest. He makes his money by taking bets and adjusting the odds or laying off side bets, so that he makes a percentage of the money bet no matter who wins the event on which the bets are placed. Similarly, defendants accepted bets on each hand of poker and, by taking a percentage of each pot, assured themselves a profit regardless who won the hand.

Defendants recognize that their conduct is similar to classic bookmaking when they admit in their briefs that they would be guilty of violating A.R.S. § 13–3307 if they had taken a percentage of a pot consisting of bets on the outcome of the World Championship of Poker held in Reno every year. The difference, defendants argue, is that in the games from which this case arose the bettors were also participants. This factor does distinguish defendants' games. However, it seems absurd to read A.R.S. § 13–3307's meager legislative history [2] as establishing that the statute covers only bookmaking operations that accept bets *on contests involving third parties* and as legitimizing bookmaking operations in which the bet is made by a participant in the game.

Defendants' argument is similar to that advanced in *People v. Dugan*, 109 Ill.2d 8, 92 Ill.Dec. 504, 485 N.E.2d 315 (1985). In that case the defendants were convicted under a bookmaking statute of conducting casino poker games similar to those run by defendants in the instant case. The statute in *Dugan* applied to persons accepting " 'bets or wagers upon the results of any ... contests ... or upon any lot, chance, casualty, unknown or contingent event whatsoever....' " *Id.* at 13, 92 Ill.Dec. at 506, 485 N.E.2d at 317 (quoting Ill.Rev.

---

**2.** See *State v. American Holiday*, 151 Ariz. at 316–317, 727 P.2d at 811–812, for a discussion of the legislative history.

Stat. ch. 38, para. 28–1.1(d) (1981)). Like defendants here, the defendants in *Dugan* argued that "bookmaking occurs when a wager is made on an event such as a horse race or sports contest in which neither the bettor nor the bookmaker is a participant." *Id.* at 13, 92 Ill.Dec. at 506, 485 N.E.2d at 317. The Illinois Supreme Court rejected defendants' argument, holding that the plain language of the statute encompassed the defendants' conduct. *Id.* We reach a similar conclusion in the case before us.

The plain language of A.R.S. § 13–3307(A) is broad enough to cover defendants' conduct. Like classic bookmakers, defendants accepted bets on the result of games of skill or chance. The statute does not require that those placing the bets be nonparticipants; it is not for us to add an element to the plain language of the statute. *People v. Dugan*, 125 Ill.App.3d 820, 827, 81 Ill.Dec. 101, 106, 466 N.E.2d 687, 692 (Ill.App.Ct.1984) ("the plain language of the bookmaking statute does not ... limit its application to situations where the bookie and bettor are nonparticipants in the event wagered upon"), *aff'd in relevant part, rev'd in part on other grounds*, 109 Ill.2d 8, 92 Ill.Dec. 504, 485 N.E.2d 315 (1985).

Defendant's conduct also falls within the statute's proscription on selling wagering pools for a fee. "Pool selling" is generally defined as "the receiving from several persons of wagers on the same event, the total sum of which is to be given the winners, subject ordinarily to a deduction of a commission by the seller of the pool." *State v. Rafanello*, 151 Conn. 453, 456, 199 A.2d 13, 15 (1964). This definition is easily broad enough to include defendants' conduct. We recognize that betting pools are usually arranged with respect to horse races or some other contest in which the bettors are

not participating.[3] *Id.* As noted, however, A.R.S. § 13–3307(A) does not impose a nonparticipation requirement. *Cf. State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983) ("where the statutory language is unambiguous, that language must be ordinarily regarded as conclusive, absent a clearly expressed legislative intent to the contrary"). Furthermore, no rationale justifying a nonparticipation requirement comes easily to mind. Indeed, reading a nonparticipation requirement into the statute would allow even classic bookmakers to escape the statute simply by participating in their own betting pools.

### 3. *A.R.S. § 13–3307 or § 13–3301*

█ Defendants' second argument is that their conduct falls within A.R.S. § 13–3301[4] rather than § 13–3307. Section 13–3301 prohibits gaming with cards and specifically proscribes conducting poker games; violation of the statute is a misdemeanor, rather than a class 6 felony as under A.R.S. § 13–3307.

This argument has some intuitive appeal, but it too seems incorrect. First, as the court of appeals recognized in *State v. Cartwright*, 20 Ariz.App. 94, 510 P.2d 405 (App.1973), the key element of A.R.S. § 13–3307(A) is the requirement that defendants be engaged in *the business* of accepting bets or wagers. That element is absent from A.R.S. § 13–3301 and provides a persuasive justification for classifying violations of A.R.S. § 13–3307(A) as class 6 felonies. *Cf. People v. Dugan*, 125 Ill. App.3d 820, 827, 81 Ill.Dec. 101, 106, 466 N.E.2d 687, 692 (Ill.App.Ct.1984) (gambling statutes covering identical conduct distinguished by one statute's focus on those engaging in the business of gambling). Defendants systematically organized and conducted casino poker games generating

---

3. The numbers game and the state lottery are examples.

4. A.R.S. § 13–3301 (Supp.1985) provides:
   **Conducting gaming by cards; classification**
   A person who knowingly opens or causes to be opened, or who conducts, either as owner, proprietor or employee, for the purpose of making a profit, any game of faro, monte,

roulette, lasquenet, rouge et noir, rondo, vingt-un, or twenty-one, poker, stud poker, draw poker, bluff, fan tan, thaw, seven and one-half, chuck-a-luck, blackjack, panginki or any similar game whatsoever, played with cards, dice or any other device, is guilty of a class 2 misdemeanor.

approximately $150,000 in profits. We believe these activities are sufficient to establish that defendants were engaged in the *business* of accepting bets or wagers or selling wagering pools for a fee.[5] A.R.S. § 13–3307(A).

Second, our research discloses no Arizona cases authorizing this court to construe penal statutes to avoid the possibility that illegal conduct can be charged under more than one statute. On the contrary, A.R.S. § 13–104 abrogates the common law rule that penal statutes are to be strictly construed. Instead, we are instructed to construe penal statutes "according to the fair meaning of their terms to promote justice and effect the objects of the law. . . ." *Id.* The objective of § 13–3307 is apparently to classify those engaged in the *business* of accepting bets or selling wagering pools as felons.

### 4. The Court of Appeals' Decision

The court of appeals did not expressly adopt either argument advanced by defendants. Instead, it held that defendants' conduct was not covered by the statute because defendants were not actually "accepting" bets or wagers. The court reasoned that taking a percentage of the pot is not "accepting" a bet or wager because defendants were not actually participating in the games and therefore did not stand to win or lose something depending on the outcome. *State v. Duci,* No. 1 CA–CR 8786, memorandum op. at 6–7 (Ariz.Ct.App. Dec. 26, 1985) (memorandum decision).

We disagree with the court of appeals' construction of the statute for several reasons. First, by adding a participation requirement not present in the statute itself, the court of appeals' decision excludes even classic bookmakers from the reach of A.R.S. § 13–3307. Like defendants' profits, a classic bookie's profits are dependent on the amount of betting and the break in the odds; profits are not contingent on the

outcome of a given contest. Similarly, like defendants, bookies usually do not participate in or bet on the contests on which they are "accepting" bets. *E.g., Cartwright,* 20 Ariz.App. at 95, 510 P.2d at 406 (bookie accepting bets on football games but not participating in the betting could violate A.R.S. § 13–440). All one need do to avoid prosecution under a participation standard is avoid participating in or betting on the contest for which one is "accepting" bets or wagers. Professional gamblers would fall within the statute while those running professional gambling operations would not. Given the statute's emphasis on those in the business of accepting bets or wagers, the court of appeals' construction of the statute is unpersuasive.

### CONCLUSION

A.R.S. § 13–3307 is a broad statute. In *American Holiday* we noted several reasons for adopting a narrow definition of the statutory terms "bets" and "wagers." Another possible factor limiting the statute's scope is the "engaging in the business" requirement. *See Cartwright, supra.* In this case, however, neither limitation is relevant. Defendants were engaged in the business of conducting casino poker games. If taking a percentage of each pot in a series of poker games does not involve the business of "accepting" bets or wagers, or pool selling, it is difficult to imagine any conduct prohibited by the statute.

We hold that under the facts before us A.R.S. § 13–3307(A) applies to persons in the business of operating casino poker games for profit. It is irrelevant that those placing the bets are participants and that those running the games are nonparticipants. The court of appeals' decisions are vacated. The judgments of dismissal entered by the trial courts are reversed.

---

**5.** This case does not require us to precisely define the factors necessary to establish that one is engaged in the business of accepting bets or wagers. However, because engaging in the business presumably requires more than a profit motive, A.R.S. § 13–3307's overlap with § 13–3301 will not usually be as complete as it is in this case.

The cases are remanded for proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.