819 P.2d 978

**STATE of Arizona, Appellant,**

v.

**Steve TAKACS and Cheryl Lynn Todd, Appellees.**

**Nos. 1 CA–CR 89–1238, 1 CA–CR 89–1239.**

Court of Appeals of Arizona, Division 1, Department C.

April 11, 1991.

Review Denied Nov. 5, 1991.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Lindy P. Funkhouser, Asst. Atty. Gen., Phoenix, for appellant State of Ariz.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellee Cheryl Lynn Todd.

Louis A. Moore, Jr., Phoenix, for appellee Steve Takacs.

## OPINION

BROOKS, Judge.

The state of Arizona appeals from the trial court's dismissal of an indictment charging appellees Cheryl Lynn Todd and Steve Takacs (defendants) with multiple counts of promotion of gambling, a class 5 felony in violation of A.R.S. section 13–3303. We consider whether dismissal was required because section 13–3303 is unconstitutionally vague. We find that the statute is not unconstitutionally vague and therefore reverse.

## BACKGROUND

The following evidence was presented to the grand jury. Takacs owned a bar called the Woodpecker Lounge in Glendale, Arizona. There were three video games located in the bar area. An entertainment room adjacent to the bar contained pool tables, dart boards, a crap table, a roulette wheel, and tables at which poker and blackjack were played.[1] The gaming tables belonged to Todd and several of her associates. The rules that governed the play at each table were established by the table's owner. The owners did not permit the bar's patrons to act as dealers or to operate the roulette wheel. One of the detectives who investigated the activities at the bar described the gambling as a "Las Vegas" style operation.

Todd normally dealt blackjack at her table, but she occasionally operated the roulette wheel when its owner was not present

---

1. The evidence presented in this case only involved the blackjack, roulette, and video games.

or needed a break. She and her associates placed all of the money that they won running the tables into a red toolbox. The detectives did not determine how the money was divided or whether Takacs received any of it.

Takacs owned the bar's three video games. Players could record their scores on these machines, and Takacs would give the player who had the week's highest score a receipt that entitled him or her to buy a twelve-pack of beer from the bar for a dollar.

Todd and Takacs were charged by indictment with multiple counts of promotion of gambling in Maricopa County Superior Court cause number CR 89–05032. Todd moved to dismiss the indictment on the ground that the applicable statutes were unconstitutionally vague. Takacs was permitted to join in this motion. The trial court granted the motion as to both defendants, and the state timely appealed. Its appeal in Takacs' case was designated cause number CR 89–1238 in this court, and its appeal in Todd's case was designated cause number CR 89–1239. We consolidated the appeals because they raised the same issues.

## DISCUSSION

### A. The Trial Court's Findings

Section 13–3303 prohibits the promotion of gambling in general, but it permits the promotion of amusement, regulated, and social gambling.[2] The trial court found that section 13–3303 was unconstitutionally vague because the statutes that defined the amusement and social gambling exceptions to it, A.R.S. sections 13–3301(1) and 13–

3301(6), were themselves unconstitutionally vague.[3] In reaching this conclusion, the court focused upon three phrases. It noted that section 13–3301(1) did not define the phrase "control to any material degree" with respect to amusement gambling and that section 13–3301(6) did not define the phrases "conducted as a business" and "compete on equal terms" with respect to social gambling. It further noted that the phrases were not defined anywhere in chapter 33. It held that in the absence of these definitions, section 13–3303 did not give the defendants fair notice of the conduct that it prohibited and did not establish sufficient standards to govern its application.

### B. The Standards Governing Vagueness

A legislative enactment is unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit standards for those who will apply it. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *State v. Tocco*, 156 Ariz. 116, 750 P.2d 874 (1988). The requirement of establishing explicit standards is especially important in the context of criminal law because "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974)). Penal

---

**2.** Section 13–3303 provides in pertinent part as follows:

> A. Except for amusement, regulated or social gambling, a person commits promotion of gambling if he knowingly does either of the following for a benefit:
>
> 1. Conducts, organizes, manages, directs, supervises or finances gambling.
>
> 2. Furnishes advice or assistance for the conduct, organization, management, direction, supervision or financing of gambling.

The defendants committed the acts in question in 1988. At that time, A.R.S. section 13–3301(3) defined "gambling" as follows:

> "Gambling" means an act of risking or giving something of value for the opportunity to obtain a benefit from a game or contest of chance or skill or a future contingent event but does not include bona fide business transactions which are valid under the law of contracts including contracts for the purchase or sale at a future date of securities or commodities, contracts of indemnity or guarantee and life, health or accident insurance.

**3.** For the texts of sections 13–3301(1) and 13–3301(6), *see infra* notes 5 and 6 respectively.

statutes also require more precision than civil statutes because "the consequences of imprecision are qualitatively less severe" where civil statutes are concerned. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 372 (1982).

However, due process does not require that a statute be drafted with absolute precision. *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983). There is a strong presumption that legislative enactments are constitutional, and a party who challenges the validity of a statute has the burden of overcoming that presumption. *Tocco*, 156 Ariz. at 119, 750 P.2d at 877. Thus, courts should give statutes a constitutional construction whenever possible. *State v. Steiger*, 162 Ariz. 138, 781 P.2d 616 (App.1989). Before declaring a statute unconstitutional, a court should consider whether a limiting construction would cure its constitutional infirmity. *Id.*

A statute is not unconstitutionally vague because one of its terms is not explicitly defined. *Juvenile Appeal Nos. JS–5209 and JS–4963*, 143 Ariz. 178, 692 P.2d 1027 (App.1984); *Powell v. State*, 624 S.W.2d 818 (Tex.App.1981). Nor is a statute unconstitutionally vague simply because it is susceptible to more than one interpretation. *Walker v. Meehan*, 194 Cal.App.3d 1290, 240 Cal.Rptr. 171 (1987) (upholding constitutionality of city gaming ordinance). Moreover, it is not the responsibility of this court to declare invalid for vagueness every statute that it believes could have been written with greater precision. *Tocco*, 156 Ariz. at 119–20, 750 P.2d at 877–78; *State v. Feld*, 155 Ariz. 88, 745 P.2d 146 (App.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 482 (1988).

### C. General Principles of Statutory Construction

Our primary task in construing a statute is to identify and give effect to legislative intent. *Martin v. Martin*, 156 Ariz. 452, 752 P.2d 1038 (1988). We will look to the statute's historical background to ascertain this intent. *Dupnick v. Mac-*

*Dougall*, 136 Ariz. 39, 664 P.2d 189 (1983). We will also look to the policy behind the statute and to the evil that it was designed to remedy. *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985). Finally, we will read statutes relating to the same subject together and harmonize them. *State v. Sweet*, 143 Ariz. 266, 693 P.2d 921 (1985). In analyzing a void-for-vagueness challenge, we will also look to the settled common law meaning of the words used, to possible technical meanings, and to judicial decisions. *See Walker*, 194 Cal.App.3d at 1302, 240 Cal.Rptr. at 178.

### D. Legislative History

In order to fairly consider the issues before us, we first examine the legislative history of the applicable statutes. Former A.R.S. sections 13–3301 through 13–3307 specifically prohibited a variety of enumerated games "played with cards, dice, or any other device," slot machines, banking or percentage games, lotteries and raffles, and the acceptance of bets or wagers. There were no statutory exceptions.

In 1987, the legislature passed a major revision to the gambling laws. The statutes that it enacted prohibited gambling in general, but specifically exempted amusement, regulated, and social gambling. These statutes were amended in 1988.

The House committee notes concerning the 1987 exemption for social gambling suggest that the legislature did not intend to legalize commercial poker parlors or casino or bookmaking operations by creating this exception. (Minutes of the House Committee on Judiciary, March 30, 1987.) They indicate that it intended to outlaw gambling that was conducted as a business, with people other than the players benefiting from the gambling activity or with the terms of the gambling favoring the "house." The purpose of creating a social gambling exception was to permit casual, friendly bets that were not conducted as a business.

The House notes to the 1988 amendment concerning amusement gambling indicate that the legislature intended this exception

to apply to games in which skill rather than chance predominated. (Minutes of the House Committee on Judiciary, March 14, 1988.) The notes specifically refer to games such as skiball, pinball, traditional midway games, and games involving intellectual contests entered into in conjunction with the purchase of a product.

The statutes were again amended in 1990 after the defendants were indicted. The new amendments served to clarify and reaffirm the legislative intent underlying the 1987 and 1988 enactments. Laws 1990, ch. 173, § 2. Some of these amendments are pertinent to this case, and we will discuss them below.

In reviewing this legislative history, we observe that the gambling statutes are not a model of clarity. However, we also observe that it is not an easy task to draft gambling laws. It has long been recognized that "gamblers are ingenious in devising ways to evade the letter of the law when only specific games are prohibited." *Walker,* 194 Cal.App.3d at 1298–99, 240 Cal.Rptr. at 176 (citing *McCall v. State,* 18 Ariz. 408, 161 P. 893 (1916)).[4] Consequent-

ly, courts are constantly being called upon to make fine distinctions in deciding what is legally permissible under gambling statutes. *See, e.g., State v. American Holiday Ass'n, Inc.,* 151 Ariz. 312, 727 P.2d 807 (1986) (holding that company charging fee to enter crossword puzzle "spell bingo" game was not engaged in illegal business of accepting bets or wagers); *State v. Duci,* 151 Ariz. 263, 727 P.2d 316 (1986) (holding that persons charging fee for running private poker games were engaged in illegal business of accepting bets or wagers).

Although we recognize that questions will inevitably arise as to whether the statutes at issue here prohibit certain activities, we do not believe that the statutes are unconstitutionally vague. We will examine each of the challenged provisions separately.

### E. The Challenged Provisions
#### 1. "[C]ontrol to any material degree"

■ In order for a device, game, or contest to constitute amusement gambling under section 13–3301(1)[5], it must meet sever-

---

4. It is inherently difficult to define gambling and to distinguish between legal and illegal games. As one legal scholar observed:

> Forcing the legislature to decide on a case-by-case basis what games are illegal has caused untold headaches, usually for law enforcement, for the last four centuries. The gamesters are much more inventive than the lawmakers; as soon as one game has been outlawed the gaming operators come up with small variations in the rules and a new name for a similar game....
>
> \*    \*    \*    \*    \*    \*
>
> It has only been in the last 20 or 30 years that state legislatures began to rewrite their anti-gambling laws to gambling games in general, rather than try and list the specific games. This is not as easy as it sounds. Try and write a statute that will outlaw craps and blackjack but not Monopoly and bridge; and keep poker legal only when it is played in a friendly game.

I. Rose, *Gambling and the Law* 71–72 (1986).

5. Section 13–3301(1) defines amusement gambling as follows:

1. "Amusement gambling" means gambling involving a device, game or contest which is played for entertainment if *all* of the following apply:
(a) The player or players actively participate in the game or contest with the device.

(b) *The outcome is not in the control to any material degree of any person other than the player or players.*
(c) The prizes are not offered as a lure to separate the player or players from their money.
(d) Any of the following:
(i) No benefit is given to the player or players other than an immediate and unrecorded right to replay which is not exchangeable for value.
(ii) The gambling is an athletic event and no person other than the player or players derives a profit or chance of a profit from the money paid to gamble by the player or players.
(iii) The gambling is an intellectual contest or event, the money paid to gamble is part of an established purchase price for a product, no increment has been added to the price in connection with the gambling event and no drawing or lottery is held to determine the winner or winners.
(iv) Skill and not chance is clearly the predominant factor in the game and the odds of winning the game based upon chance cannot be altered, provided the game complies with any licensing or regulatory requirements by the jurisdiction in which it is operated, no benefit for a single win is given to the player or players other than a merchandise prize

al requirements. One of these requirements is that its outcome must not be "in the control to any material degree of any person other than the player or players." A.R.S. § 13–3301(1)(b). The trial court found that the phrase "control to any material degree" was unconstitutionally vague. We disagree.

Words and phrases in a statute are to be given their ordinary meaning unless it appears from the context of the statute or from that of the act of which the statute is a part that a different meaning is intended. *State Compensation Fund v. Nelson*, 153 Ariz. 450, 737 P.2d 1088 (1987). The word "material" is defined as "having influence or effect." *Black's Law Dictionary* 976 (6th ed. 1990). Thus, when section 13–3301(1)(b) is interpreted in accordance with the ordinary meaning of its terms, it requires that the outcome of a device, game, or contest not be in the control of any nonplayer to such a degree that the nonplayer can have an influence or effect upon it. Because we believe that this meaning would be apparent to a person of ordinary intelligence, we conclude that the phrase "control to any material degree" is not unconstitutionally vague.

### 2. "[C]onducted as a business"

Section 13–3301(6)[6] defines social gambling. It provides that social gambling is, among other things, gambling that is not "conducted as a business." The trial court found that this phrase was unconstitutionally vague. Again, we disagree.

As one court observed, "The average person understands that an activity conducted 'as a business' is one that is regularly conducted, with prescribed methods, to make a profit." *State v. Postema*, 46 Wash.App. 512, 516, 731 P.2d 13, 16 (1987) (upholding constitutionality of Washington statute prohibiting bookmaking); *see also State v. Cartwright*, 20 Ariz.App. 94, 510 P.2d 405 (1973) (interpreting phrase "engaged in the business of accepting wagers" as exempting purely social or friendly bets from Arizona's prior gambling laws). Courts have consistently upheld gambling statutes containing similar phrases against void-for-vagueness challenges. *See, e.g., United States v. Sacco*, 491 F.2d 995 (9th Cir.1974) (upholding constitutionality of 18 U.S.C.A. section 1955, which prohibits "illegal gambling business"); *United States v. Riehl*, 460 F.2d 454 (3rd Cir.1972) (same); *United States v. Smith*, 209 F.Supp. 907 (E.D.Ill.1962) (upholding constitutionality of 18 U.S.C.A. section 1084, which prohibits "engag[ing] in the business of betting or wagering" through the use of the interstate telephone).

We note that the legislature amended section 13–3301(3) in 1990 to include the following definition of the phrase in question: "Gambling is conducted 'as a business' when it is engaged in with the object of gain, benefit or advantage, either direct or indirect, realized or unrealized, but not when incidental to a bona fide social relationship." Laws 1990, ch. 173, § 1. The mere fact that an amendment clarifies the legislative intent of an earlier statute does not render the earlier statute unconstitutionally vague. *See Tocco*, 156 Ariz. at 119, 750 P.2d at 877; *Sweet*, 143 Ariz. at 271, 693 P.2d at 926. Because we conclude that a person of ordinary intelligence would understand the meaning of

---

which has a wholesale fair market value of less than four dollars or coupons which are redeemable only at the place of play and only for a merchandise prize which has a fair market value of less than four dollars and, regardless of the number of wins, no aggregate of coupons may be redeemed for a merchandise prize with a wholesale fair market value of greater than thirty-five dollars. (Emphasis added.)

**6.** When the defendants committed the acts in question, section 13–3301(6) defined social gambling as follows:

*"Social gambling" means gambling which is not conducted as a business and involves players who compete on equal terms with each other in a gamble if all of the following apply:*
(a) No player receives, or becomes entitled to receive, any benefit, directly or indirectly, other than his winnings from the gamble.
(b) No other person receives, or becomes entitled to receive, any benefit, directly or indirectly, from the gamble.
(c) None of the players are below the age of majority.

the phrase "conducted as a business" in the context of section 13–3301(6), we find that the phrase is not unconstitutionally vague.

### 3. "[C]ompete on equal terms"

■ Section 13–3301(6) also provides that social gambling is gambling that "involves players who compete on equal terms with each other in a gamble." The trial court found that the phrase "compete on equal terms" was unconstitutionally vague.

On appeal, the state argues that the meaning of the phrase is clear: in order for an activity to be considered social gambling, its rules must not permit one player, such as the "house", to enjoy better odds than the other players. Todd rejects this interpretation. She contends that it is not clear whether the words "equal terms" refer to the players' skill levels, to their wealth, or to the nature of the game itself.

We believe that the state's interpretation is in keeping with the ordinary meaning of the words used. The word "terms" may be defined as "relative position" or "footing". *Webster's Third New International Dictionary* 2358 (1965). Therefore, a game in which the players "compete on equal terms with each other in a gamble" is a game in which the rules do not favor any player over the others, but place all the players in the same relative position or on the same footing.

We also believe that this interpretation is supported by the legislative history of section 13–3301(6). The phrase in question has been part of the statute since it was first enacted in 1987. Laws 1987, ch. 71, § 4. The 1987 House committee notes indicate that the legislature intended to define social gambling as gambling that was not conducted as a business and that did not have rules which favored the "house". (Minutes of the House Committee on Judiciary, March 30, 1987.)

This definition was consistent with earlier Arizona law, which historically banned games in which the rules did not give all of the players an equal chance to win. Arizona Revised Statutes section 13–3303, which was in effect prior to the 1987 amendments to the gambling laws, prohibited percentage and banking games. A percentage game is one in which the house collects a percentage of the amount of money wagered, of the winnings collected, or of the money changing hands during the game. *Sullivan v. Fox*, 189 Cal.App.3d 673, 235 Cal.Rptr. 5 (1987). A banking game is one in which the house acts as a bank and plays against all of the other players. *Id.* It collects all of the money wagered, pays the players who win, and retains the rest of the money that the players lose. *State v. Rabb*, 130 La. 370, 57 So. 1008 (1912).[7] In both percentage and banking games, the house has the advantage. *United States v. Gerhart*, 275 F.Supp. 443 (S.D.W.Va.1967); *State v. Gaughan*, 55 W.Va. 692, 48 S.E. 210 (1904).

We note that the legislature amended section 13–3301(6) in 1990. Laws 1990, ch. 173, § 1. The statute now provides that "[p]layers 'compete on equal terms with each other in a gamble' when no player enjoys an advantage over any other player in the gamble under the conditions or rules of the game or contest." The amended statute also provides that a game qualifies as social gambling only if its rules do not permit nonplayers to receive benefits from the gambling, including the benefits of "proprietorship, management or unequal advantage or odds in a series of gambles." As we have explained, the mere fact that an amendment clarifies the legislative intent of an earlier statute does not render the earlier statute unconstitutionally vague. *See Tocco*, 156 Ariz. at 119, 750 P.2d at 877; *Sweet*, 143 Ariz. at 271, 693 P.2d at 926. Because we conclude that a person of ordinary intelligence could understand the meaning of the phrase "compete on equal terms with each other in a gamble" in the context of section 13–3301(6), we find that the phrase is not unconstitutionally vague.

Cal.App.3d 1290, 240 Cal.Rptr. 171 (1987).

---

**7.** In some instances, a banking game may also be a percentage game. *Walker v. Meehan,* 194

### F. Arguments Raised For The First Time On Appeal

Todd argues for the first time on appeal that the statutes in question are unconstitutionally overbroad and that they violate first amendment rights of privacy and association. Because these arguments were not presented to the trial court, we decline to address them on appeal. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073 (1987).

### CONCLUSION

The trial court's order dismissing the indictment is vacated, and this matter is remanded to the trial court for proceedings consistent with this opinion.

SHELLEY, P.J., and GERBER, J., concur.