848 P.2d 864

**The STATE of Arizona, Appellee,**

v.

**Louis Arnold ROWAN, Appellant.**

**No. 2 CA–CR 90–0657.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 27, 1992.

Review Granted on Issue 2 and Denied on Issue 1; Cross-Petition for Review Granted on both Issues April 13, 1993.*

---

* Martone, J., of the Supreme Court, voted to grant review of issue 1 of the petition for review.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Eric J. Olsson, Tucson, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Brian X. Metcalf, Tucson, for appellant.

DRUKE, Presiding Judge.

Appellant was convicted by a jury of violating A.R.S. § 13–3208(B), keeping or maintaining a house of prostitution, and A.R.S. § 13–3210, transporting a person for purposes of prostitution. He admitted a prior conviction, and the court found that appellant was on probation at the time he committed the instant offenses. The court imposed concurrent, presumptive three-year sentences, which appellant must serve day-for-day.

## FACTS AND PROCEDURAL BACKGROUND

The Tucson Police Department Vice Squad began an investigation into a business known as Ginger's Beeper Service on December 7, 1989, with a telephone call by Sergeant Ray Grimshaw to the number given for Ginger's in its advertisement in a local newspaper known as *Tucson Tonite.* Grimshaw spoke to Leslie Parker, appellant's codefendant at trial, and another woman who later became known as Connie Najara. Grimshaw made arrangements with Najara for a full body massage and

she met him later that day at a local motel, arriving in a vehicle registered to Parker. Najara was subsequently arrested for prostitution when she offered to perform a sexual act for money, although she was not charged in the instant case.

Grimshaw's telephone conversation had been taped and was played at appellant's joint trial with Parker. Although no one made any reference to sex or sex for money during this taped conversation, Parker did mention two other women whom Grimshaw knew were prostitutes. However, it was stipulated that the male voice heard on the tape was not appellant's, and there was no evidence that he was involved in any way with the events of December 7, 1989.

The police investigation into Ginger's Beeper Service lay dormant until March 1990 when Sergeant Thomas Danaher responded to Ginger's advertisement in the January 10–23, 1990, edition of *Tucson Tonite*. Danaher spoke with appellant and, for $100, arranged for a woman to meet him at the Hacienda Motel for a full body massage. During the call, there was no discussion or reference to any sexual activity or sexual acts.

Appellant subsequently dropped Parker off at the motel and was arrested moments later. His car was searched and a digital pager was found which answered to the phone number for Ginger's Beeper Service. Inside the motel room, there was no discussion, offer, or agreement of sex for money between Danaher and Parker, but she did inform him that she had condoms if he did not. After obtaining payment, Parker told Danaher to "get comfortable," whereupon he removed his clothes. Parker then stripped to only a pair of panty hose and began applying lotion to Danaher's body. She massaged his chest and his back. When she rubbed his genitals, Danaher placed Parker under arrest. Neither appellant nor Parker made statements after their arrests, and they did not testify at trial.

## ISSUES PRESENTED

Appellant claims the trial court committed error in four respects:

(1) By failing to direct a verdict of acquittal on the charge of transporting a person for purposes of prostitution because there was no evidence that appellant (a) transported Parker "through or across this state" or (b) knew that Parker would engage in acts of prostitution.

(2) By failing to direct a verdict of acquittal on the charge of operating or maintaining a prostitution enterprise because there was no substantial evidence that appellant operated or maintained Ginger's Beeper Service or that Ginger's Beeper Service was in fact a prostitution enterprise.

(3) By improperly admitting into evidence the entire issue of *Tucson Tonite* containing the advertisement for Ginger's Beeper Service.

(4) By improperly accepting his admission of the prior conviction.

## "THROUGH OR ACROSS THIS STATE"

Appellant was convicted of violating A.R.S. § 13–3210, which states:

A person knowingly *transporting* by any means of conveyance, *through or across this state*, any other person for the purpose of prostitution or concubinage, or for any other immoral purpose, is guilty of a class five felony. *The prosecution of such a person may be in any county in which such person is apprehended.*

(Emphasis added.) At the close of the state's case, appellant moved for a directed verdict arguing, *inter alia*, that unless the words "through or across this state" were interpreted to mean "transporting" at least from county to county, then A.R.S. § 13–3210 was void for vagueness. Relying on *State v. Smith*, 431 S.W.2d 74 (Mo.1968), the trial court denied the motion for a directed verdict, finding "that the distance travelled [was] immaterial in the definitions of across and through...." We disagree.

Our primary task in construing a statute is to identify and give effect to legislative intent. *Martin v. Martin*, 156 Ariz. 452, 752 P.2d 1038 (1988). We look at

the policy behind the statute and the evil it was designed to remedy, *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985), and to the statute's historical background to ascertain this intent. *Dupnik v. MacDougall,* 136 Ariz. 39, 664 P.2d 189 (1983).

A.R.S. § 13–3210 has descended virtually unchanged in substance since first codified in Section 247 of the Arizona Penal Code of 1913.[1] Minor changes in form occurred in 1928, and the final changes occurred in 1978 when the law was renumbered as A.R.S. § 13–3210, the mental state of "knowingly" was added, the attempt provision was deleted, and the crime was designated as a class five felony. Since 1913, the law has remained unchanged in the use of the phrase "through or across this state" and unchanged in providing for prosecution in any county in which the offender is apprehended. We thus conclude that the statute's original intent has also remained unchanged.

The statute appears to have been enacted as part of a national effort to stop the forced importation of women into this country for purposes of prostitution. In 1910, the United States Congress passed the White Slave Traffic Act (Mann Act), 18 U.S.C.A. §§ 2421 through 2424, which prohibited the interstate transportation of women for purposes of prostitution. Several states shortly thereafter adopted statutes to help in this national effort, one of them being Arizona.

The 1913 penal code did not outlaw prostitution, but merely restricted and segregated prostitution activities to certain locations. *Dillard v. State,* 32 Ariz. 607, 261 P. 337 (1927). The regulation of prostitution on the local level was left to local government.[2] It thus appears that prohibiting the transportation of prostitutes through or across the state was intended to serve a non-local interest and not to prohibit one local resident from driving another local resident several blocks within the

same county or city to engage in prostitution activities that may have, by local option, been legal. Were the intent to serve the local interest, that intent would have been expressed by simply deleting the phrase "through or across this state" from the statute.

Additionally, long-established principles of statutory construction require that words be given "their ordinary meaning unless it appears from the context of the statute or from that of the act of which the statute is part that a different meaning is intended." *State v. Takacs,* 169 Ariz. 392, 397, 819 P.2d 978, 983 (App.1991). If the ordinary meaning of words is unclear, the court must look to "the settled common law meaning of the words used, to possible technical meanings, and to judicial decisions." *Id.* at 395, 819 P.2d at 981. Finally, "[e]ach word, phrase, clause, and sentence must be given meaning so that no part will be void, inert, redundant, or trivial." *City of Phoenix v. Yates,* 69 Ariz. 68, 72, 208 P.2d 1147, 1151 (1949).

The word "through" means from one end or boundary to another. *Webster's Third New International Dictionary* 2384 (1971). The word "across" means from one side to the opposite side. *Id.* at 20. The ordinary meaning of the word "transport" is "to transfer or convey from one place to another." *State v. Scotia,* 146 Ariz. 159, 160, 704 P.2d 289, 290 (App.1985); *see also State v. Mahoney,* 106 Ariz. 297, 475 P.2d 479 (1970), *cert. denied,* 401 U.S. 917, 91 S.Ct. 898, 27 L.Ed.2d 818 (1971). Thus, when read together, the ordinary meaning of the words "transport ... through or across this state" in A.R.S. § 13–3210 is to transfer or convey someone from one end or boundary line of this state to another, that is, from one side of Arizona to the other side. This construction is also reasonably inferred, we believe, from the statute's final sentence, which permits a defendant to be prosecuted "in any county in which such person is apprehended."

---

**1.** *See* Ariz.Rev.Code § 4634 (1928); Ariz.Code Ann. § 43–4406 (1939); A.R.S. § 13–592 (renumbered as § 13–3210 by 1977 Ariz.Sess.Laws, Chap. 142, § 96).

**2.** In fact, it was not until 1981 that the state code outlawed the act of prostitution itself. *See* A.R.S. § 13–3214.

■ We therefore decline to adopt, as the trial court did, the construction given the Missouri statute in *State v. Smith,* *supra,* "that the distance traveled is immaterial." 431 S.W.2d at 78. Giving effect to our statute's particular language in light of Arizona's unique history, we hold that A.R.S. § 13–3210 requires something more than simply driving someone down the street as occurred here. Because there was no evidence presented that appellant transported Parker within the meaning of A.R.S. § 13–3210, the trial court erred in denying appellant's motion for a directed verdict. *State v. LaGrand,* 138 Ariz. 275, 674 P.2d 338 (App.1983).

Based on our discussion above, we need not address appellant's second argument with regard to this issue.

### PROSTITUTION ENTERPRISE

Appellant next contends that the trial court erred in denying his motion for a directed verdict on the charge of violating A.R.S. § 13–3208(B) because there was no substantial evidence that he operated or maintained a prostitution enterprise. We disagree.

■ A.R.S. § 13–3208(B) provides that "[a] person who knowingly operates or maintains a house of prostitution or prostitution enterprise is guilty of a class 5 felony." A.R.S. § 13–3211(6) defines "prostitution enterprise," in part, as "any group of individuals associated in fact although not a legal entity engaged in providing prostitution services." Here, the evidence established that appellant answered Danaher's call to Ginger's Beeper Service, discussed the price of a full body massage with him, drove Parker to the agreed-upon motel for the massage, and was apprehended with a beeper that answered to Ginger's Beeper Service's telephone number. This evidence, along with the evidence that Parker committed an act of prostitution after she was dropped off at the motel, was sufficient to permit the jury to infer that appellant and Parker acted as a "group of individuals associated in fact" for the purpose of providing prostitution services.

As to whether there was sufficient evidence that appellant "operated or maintained" a prostitution enterprise, all the state was required to establish was that appellant perpetuated or furthered the aims of such an enterprise. A.R.S. § 13–3211(3) provides that "operate and maintain" means "to organize, design, perpetuate or control" and "includes providing financial support by paying utilities, rent, maintenance costs or advertising costs, supervising activities or work schedules, and directing or furthering the aims of the enterprise." Appellant's actions could well be interpreted as "furthering the aims" of a prostitution enterprise. The mere existence of an inference of innocence does not mandate a directed verdict of acquittal. *State v. Ortiz,* 9 Ariz.App. 116, 118, 449 P.2d 953, 955 (1969).

Given the evidence presented by the state, reasonable minds could differ on whether appellant was part of a prostitution enterprise and whether his conduct contributed to its maintenance and operation. Accordingly, the trial court did not err in refusing to grant a directed verdict on this count. *See State v. Cantua–Ramirez,* 149 Ariz. 377, 379, 718 P.2d 1030, 1032 (App.1986).

### TUCSON TONITE

■ Prior to Danaher's testimony about the events inside the motel room, the state moved to admit into evidence the entire *Tucson Tonite* newspaper in which the advertisement for Ginger's Beeper Service appeared. *Tucson Tonite* is a newspaper replete with sex-related stories and listings of sex-related services or activities. It contains photographs of partially clad women in sexually provocative poses and other advertisements that explicitly offer and seek sexual relations. It also advertises sexually explicit books, videos, and novelties. On the other hand, Ginger's advertisement in the January 10–23, 1990, issue of *Tucson Tonite* merely states:

### GINGER'S BEEPER SERVICE

Enjoy your holiday seasons, get a great massage and a wonderful smile. We

give prompt courteous srevice [sic]. Beep me, dial in your phone no. Use a touch tone phone only. Open 24 hours, 7 days, daytime rates at 791–8984. 1/30.

Defense counsel objected to the admission of the newspaper on the grounds that it was irrelevant, needlessly prejudicial, and lacked sufficient foundation to establish that appellant had anything to do with the creation or placement of Ginger's advertisement. Moreover, defense counsel specifically requested that if the advertisement were to be admitted, it should be cut out of the newspaper and presented in isolation. The court overruled all of the objections and admitted the entire newspaper.

" 'Relevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401, 17A A.R.S. Because *Tucson Tonite* contains information tending to show that the "massages" were sexually oriented, rather than medically or athletically therapeutic, it was relevant to the issue of prostitution irrespective of whether the creation or placement of Ginger's advertisement was directly linked to appellant. We agree with the trial court that its admission would "[c]omplete the story to the jury." We also cannot say from our own review of the newspaper that the trial court abused its discretion in determining that the newspaper's probative value outweighed any prejudicial effect it may have on the jury. *State v. Stotts*, 144 Ariz. 72, 82, 695 P.2d 1110, 1120 (1985).

▇ Appellant further argues that the newspaper was inadmissible hearsay and that it amounted to a form of guilt by association or inadmissible character evidence. These arguments were not made to the trial court and are therefore waived. We will not consider evidentiary theories advanced for the first time on appeal. *State v. Schaaf*, 169 Ariz. 323, 332, 819 P.2d 909, 918 (1991).

## ADMISSION OF PRIOR CONVICTION

▇ Appellant's final argument is that the trial court improperly accepted his admission of the prior felony conviction because the court failed to advise him that if it found he was on felony probation when he committed the instant offenses, appellant would be required under A.R.S. § 13–604.02(B) to serve his sentences day-for-day, rather than being eligible for release after serving half of his sentence. The court advised appellant as follows regarding his potential range of sentence:

> Now, by admitting to that offense, Mr. Rowan, I need to advise you that the sentencing range for this class, for both Class 5 felonies for which you have been convicted will be increased. The range of sentence without the prior convictions [sic] is a minimum of one year and a maximum of 2½ years, and I believe probation would have been available to you without this prior conviction, and *if you were sentenced to prison without the prior, you would have to serve one-half of any sentence imposed. Now with this prior conviction,* the sentencing range is a minimum of 2 years, a presumptive sentence of 3 years, a maximum sentence of 4 years, and probation is not available to you, and *you will still have to serve one-half of any sentence that the court imposes.* Do you understand that this prior conviction makes probation unavailable to you and increases your range of sentence from 1 to 2½ years up to 2 to 4 years?

(Emphasis added.) It is thus apparent that the court failed to advise appellant of the statutorily mandated day-for-day sentence he faced if the court found, as it subsequently did at sentencing, that he was on probation at the time of the instant offenses. Such an omission is, we believe, contrary to Ariz.R.Crim.P. 17.2(b), 17 A.R.S., which requires that a defendant admitting a prior conviction be advised of "any special conditions regarding sentencing." *See State v. James*, 126 Ariz. 353, 615 P.2d 650 (App.1980); *State v. Rodriguez*, 126 Ariz. 104, 612 P.2d 1067 (App. 1980).

We believe the state's reliance on *State v. Rushing*, 156 Ariz. 1, 3, 749 P.2d 910, 912 (1988), is misplaced because, as the following from the supreme court's opinion makes clear, the defendant in *Rushing*, unlike the case *sub judice*, was specifically advised by the trial court that his sentence would be affected by a finding that he was on probation:

> Obviously mindful that the life imprisonment provisions of A.R.S. § 13–604.02 would come into play on the aggravated assault charge *if the defendant were also found to have been on probation,* the trial court carefully explained that the new sentence ranges would not apply to that count.

Although appellant has made no claim that the allegation of a prior conviction was untrue, we are unable to determine from the record whether he understood the effect a prior conviction would have on his possible sentence if the court also found he was on probation. If appellant had such an understanding prior to sentencing, the trial court's failure to comply with Rule 17.2(b) is technical error and the prior conviction and sentence must be affirmed. *See State v. Rios*, 113 Ariz. 30, 545 P.2d 954 (1976). Conversely, if he did not, the prior conviction and sentence must be set aside and further proceedings held accordingly.

We therefore remand the case for an evidentiary hearing relating to appellant's admission of the prior conviction, affirm appellant's conviction for keeping or maintaining a house of prostitution, and vacate his conviction for transporting a person for purposes of prostitution.

FERNANDEZ and HATHAWAY, JJ., concur.