977 P.2d 784

Leonard H. and Connie AROS, husband and wife; Ronald E. and Belle Wade, husband and wife; Arturo and Odine Espinoza, husband and wife; Johnnie and Jeanne Breckenridge, husband and wife; James E. and Suzanne Clark, husband and wife; John E. and Theresia Berry, husband and wife; individually and on behalf of others similarly situated, Plaintiffs–Appellants,

v.

BENEFICIAL ARIZONA, INC., formerly known as Beneficial Finance Company of Arizona, a Delaware corporation; Beneficial Mortgage Company of Arizona, a Delaware corporation; and Southwest Beneficial Finance, Inc., a Delaware corporation, Defendants–Appellees.

No. CV–97–0502–PR.

Supreme Court of Arizona, En Banc.

April 20, 1999.

---

Bruce A. Burke, Tucson, and Arizona Justice Institute By: William E. Morris, Tucson, Attorneys for Plaintiffs.

Meehan & Associates By: Michael J. Meehan Mark Dinell, and Slutes Sakrison Grant Hill & Rubin, P.C., By: Mark D. Rubin, Tucson, and Bryan Cave, L.L.P. By: Stephen M. Dichter Robert C. Van Voorhees, Phoenix, Attorneys for Defendants.

## OPINION

FELDMAN, Justice.

The court of appeals held that between 1980 and 1984, lenders licensed under the Consumer Loan Act (CLA) could make loans without being subject to the CLA's restrictions. Thus, the court of appeals affirmed the trial judge's dismissal of plaintiffs' lawsuit. *Aros v. Beneficial Arizona, Inc.* (*Aros II*), No. 1 CA–CV 96–0393 (App. Oct. 9, 1997) (mem. dec.). We accepted review and now hold that during that four-year period, the non-interest restrictions of the CLA applied to licensed lenders. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

The detailed history of this thirteen-year litigation and the evolution of Arizona's usury

and consumer loan laws have been well documented in earlier decisions. *See Transamerica Financial Corp. v. Superior Court,* 155 Ariz. 327, 746 P.2d 497 (App. 1987), *vacated by Transamerica Financial Corp. v. Superior Court* (*Rascon I* ), 158 Ariz. 115, 761 P.2d 1019 (1988); *Rascon v. Transamerica Financial Corp.* (*Rascon II* ), 168 Ariz. 201, 812 P.2d 1019 (App. 1990); *Aros v. Beneficial Arizona, Inc.* (*Aros I* ), Nos. 1 CA–CV 92–0204 and 1 CA–CV 92–0259 (consolidated) (App. Aug. 18, 1994) (mem. dec.); *Aros II,* No. 1 CA–CV 96–0393. We need not repeat the lengthy history here. The following brief summary is intended only to give background to our discussion.

Since before statehood, Arizona has had general usury laws that regulate the amount of interest a lender could charge. Historically, these statutes have set a maximum interest rate, which the legislature periodically altered in response to market conditions. *Aros II,* mem. dec. at 6; *Rascon II,* 168 Ariz. at 202, 812 P.2d at 1020. At the same time, Arizona has had a Small Loan Act that placed certain restrictions on licensed consumer lenders. Although licensed lenders were governed by more restrictions than unlicensed lenders, they nevertheless had an incentive to obtain a license because it allowed them to charge a higher interest rate than their unlicensed counterparts. *Aros II,* mem. dec. at 6–7; *Rascon I,* 158 Ariz. at 116–17, 761 P.2d at 1020–21.

The general usury laws and the small loan laws existed in harmony until 1980 when the legislature amended both acts. The legislature removed the ceiling on interest rates in the general usury statute and, at the same time, passed an amended version of the Small Loan Act, renaming it the Consumer Loan Act. Many of the CLA's provisions remained unchanged, including A.R.S. § 6–602, the "scope of article," which is the source of this confusion.[1]

Section 6–602(A) makes it unlawful to charge an interest rate greater than the rate allowed under the general usury statute unless the lender first obtained a license. Prior to 1980, this statute made sense because the general usury statute contained a limit on the amount of interest a lender could charge. Thus, small loan lenders who wanted to charge more than the general usury limit were first required to obtain a license. By doing so, they brought themselves within the scope of the Small Loan Act and subjected themselves to the Act's restrictions. In 1980, however, when the legislature removed the ceiling on interest rates in the general usury statute, this provision no longer made sense. With the ceiling removed, unlicensed lenders could now charge any interest rate agreed to in writing. *See* A.R.S. § 44–1201(A). Thus, there remained little incentive to submit to the regulation of the CLA by obtaining a license. *See Rascon II,* 168 Ariz. at 207, 812 P.2d at 1025; *Transamerica,* 155 Ariz. at 330, 746 P.2d at 500.

In 1986, a group of consumer borrowers (collectively "Aros") brought a class action against certain lenders (collectively "Beneficial") alleging violations of the CLA. Initially, Aros alleged that Beneficial made loans with interest rates exceeding those permitted by the CLA.[2] The court of appeals, however, held that the version of A.R.S. § 6–602(A) that existed between 1980 and 1984 permitted licensed lenders to make consumer loans at interest rates allowed under the general usury statute. *See* A.R.S. § 44–1201(A); *Rascon II,* 168 Ariz. at 207, 812 P.2d at 1025. Because the legislature had amended the general usury statute in 1980 to allow any interest rate agreed to in writing, there was thus no limit on the interest Beneficial could charge. After the decision in *Rascon II,* Aros amended the complaint to focus on other alleged violations of the CLA, claiming that Beneficial sold unwanted and unnecessary insurance, made unexplained and unauthorized charges, and set up payment plans with prohibited balloon payments. *Aros II,* mem. dec. at 3. The trial judge dismissed Aros' complaint, concluding that the CLA

---

1. In 1984, the legislature resolved the confusion by amending § 6–602 to require all consumer lenders to be licensed and thus regulated by the CLA. *See* Laws 1984, ch. 238, § 5. All references to specific sections of the CLA in this opinion refer to the version in effect between 1980 and 1984.

2. Section 6–622 of the 1980 CLA identified maximum interest rates that *licensed* lenders could charge. *See* Laws 1980, ch. 252, § 6.

"does not apply to the loans in question in this case." *Id.* at 5. The court of appeals agreed—with Judge Kleinschmidt dissenting—and held that licensed lenders could make consumer loans between 1980 and 1984 without being subject to any provision of the CLA. *Id.* at 13. Aros petitioned this court for review of that decision.

## DISCUSSION

In essence, the court of appeals concluded that A.R.S. § 6–602 was a "true scope provision" and as such defined threshold requirements before the CLA would apply. When considering the 1980 amendments as a whole, the text of § 6–602 [3] is far from clear. It reads:

> A. It is unlawful for a person to engage in the business of lending in amounts of ten thousand dollars or less *and* contract for, exact or receive, directly or indirectly, or in connection with any such loan, any charges, whether for interest, compensation, consideration or expenses, which in the aggregate are greater than the interest that the lender would be permitted by law to charge for a loan of money if he were not a licensee under this article, except as provided by this article, and without first having obtained a license from the superintendent....

A.R.S. § 6–602(A) (emphasis added); *see also Rascon II,* 168 Ariz. at 205, 812 P.2d at 1023 (noting that "the language of § 6–602(A) is far from plain"). Under the court of appeals' interpretation, the CLA applied only to licensed lenders who made loans with interest rates exceeding the general usury rate. Because Aros had not alleged the loans violated the general usury law—and in fact *could not* have alleged so because the amended usury statute contained no limit on interest rates—the loans were not governed by the CLA. This meant, of course, that lenders licensed under the CLA were not only free from the Act's interest limits but were also not subject to any of the Act's non-interest restrictions.

In Arizona, small loan legislation has long been construed as protecting the borrower's interests. Our court of appeals has identified

one purpose of the legislation as protecting consumers from "unconscionable lending practices." *Rascon II,* 168 Ariz. at 207, 812 P.2d at 1025. Aros argues that nullifying the non-interest restrictions of the CLA cannot possibly benefit consumers. Moreover, the court of appeals' interpretation effectively repeals the entire CLA between 1980 and 1984. Because the CLA and the general usury statute's 1980 amendments were adopted in the same legislative session, it is highly doubtful that the legislature intended that the CLA was to have no effect. Aros contends that the less than clear scope provision should not be interpreted to nullify the Act's other clear, specific, substantive restrictions.

Beneficial, on the other hand, asserts that the purpose of consumer loan laws is to impose an extra layer of regulation only on those lenders who charge more than the general usury statute permits. If the total of all charges did not exceed the interest allowed by the general usury statute, the loan did not fall within the scope provision and was thus not governed by any of the CLA's provisions. *See* A.R.S. § 6–602(A). Aros' assertion that small loan laws must be construed to favor consumers begs the question of whether the CLA applies to the loan at all. Thus, Beneficial contends that the court of appeals was correct in holding that after removal of the general ceiling on interest rates, the CLA's non-interest provisions did not apply to licensed lenders.

Beneficial also insists that the court of appeals' decision does not effectively repeal the CLA. For example, the Act still applies to loans made prior to 1980. Likewise, provisions relating to annual examinations, investigations, annual reports, and advertising still apply to licensees. As an illustration, Beneficial cites § 6–605.01(A), which requires an annual review of each licensee's records that "pertain to the business licensed under this article or to loans made under any other provisions of law." Because the statute refers to "loans made under any other provisions," Beneficial claims this statute still has effect. But if § 6–602(A) is a true scope provision, as Beneficial contends and as the court of appeals held, then these provisions,

---

**3.** The 1980 text remained essentially unchanged from the version of § 6–602 contained in the Small Loan Act. The only substantive change was an increase in the permitted maximum amount of a loan from $2,500 to $10,000. *See* Laws 1980, ch. 252, § 2.

too, would not apply to loans falling outside § 6–602. Because the usury statute imposed no limit on interest rates, no loan could fall within the scope of § 6–602 under Beneficial's rationale, thus rendering the twenty-plus sections of the CLA meaningless. We do not believe the legislature intended such a result.

Beneficial also contends that the legislature's failure to make the 1984 amendments to the CLA retroactive is evidence that the legislature did not intend the CLA's restrictions to apply between 1980 and 1984. This argument, too, does not persuade us. To be sure, had the legislature made the 1984 amendments retroactive, our task would be remarkably easier. That the amendments were not retroactive, however, does not absolve us of our duty to interpret the CLA as it existed between 1980 and 1984. Under these facts, discerning legislative intent from its failure to make the amendments retroactive would lead to an illogical result—that the legislature enacted the 1980 CLA intending it to have no effect.

■■■ We must interpret A.R.S. § 6–602(A). If a statute is clear and unambiguous, we apply it without using other means of statutory construction. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). When an ambiguity exists, however, we attempt to determine legislative intent by interpreting the statute as a whole, and consider "the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). If neither the statute's text nor the statement of legislative intent resolves the exact issue before the court, "we must resolve any ambiguity by considering the legislature's overall purposes and goals in enacting the body of legislation in question." *Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.*, 190 Ariz. 84, 87, 945 P.2d 805, 808 (1997).

■■ Neither the parties, the court of appeals, nor this court could find an explicit statement of legislative intent behind the 1980 amendments to the CLA. There are two plausible constructions of § 6–602. The first, advanced by Beneficial, is that no lender—not even a licensed lender—is within the

scope of the CLA. To fall within § 6–602, the lender must charge a higher interest rate than permitted by the general usury statute. Because there was effectively no limit on the interest rate in the general usury law after 1980, no lenders would have been governed by the CLA. The second construction is that the simultaneous removal of usury limits and re-enactment of the CLA repealed the interest limits previously applicable under § 6–622 but left licensees subject to the other restrictions on lending. The court of appeals adopted the first construction. We find the second more plausible and adopt it, believing it more in line with legislative purposes and goals.

As Judge Kleinschmidt noted in his dissent, had the 1980 legislature wanted to leave consumers unprotected from unfair and predatory lending practices, it could have easily repealed the Small Loan Act. But it did just the opposite. It re-enacted the law, renaming it the Consumer Loan Act, in the same session in which it removed the general usury statute's ceiling on interest rates. *See Rascon II*, 168 Ariz. at 203, 812 P.2d at 1021. Although substantial confusion resulted from amending the general usury statute without clarifying § 6–602, we assume the legislature did not intend a futile act by simultaneously adopting the more than twenty statutes contained in the CLA. *See Campbell v. Superior Court*, 105 Ariz. 252, 255, 462 P.2d 801, 804 (1969) ("[W]e must be guided by the presumption that the legislature did not intend to do a futile act by including a provision which is not operative or that is inert and trivial.").

■■ The contrary view would effectively nullify the CLA between 1980 and 1984. The court of appeals' majority concluded that the reasoning in *Rascon II*, which held that the 1980 amendments negated the CLA's interest rate limits, applied equally to the non-interest provisions. *Aros II*, mem. dec. at 10. We disagree. Arizona's small loan laws have a dual purpose—first, to protect consumers from abuses and predatory practices and second, to allow authorized lenders to lawfully charge higher interest rates on small loans than would be allowed under the general usury statute. *See Rascon II*, 168 Ariz. at 202, 812 P.2d at 1021. In *Rascon II*, the court of appeals reasoned as follows:

The lenders ... had always been allowed to make loans, including consumer loans, at rates "permitted by law," that is, at rates permitted under the general usury statute. A license was required only if rates were charged in excess of those "permitted by law." Thus ... it would be nonsensical to propose that the legislature, during a financial crisis, would suddenly grant all other lenders freedom to charge any rate they desired and at the same time deprive consumer lenders of their historic preferential status to charge higher interest rates and also prohibit them from charging rates "permitted by law."

*Rascon II*, 168 Ariz. at 206, 812 P.2d at 1024. While logically correct, this reasoning has no application to the non-interest provisions. While it is true that A.R.S. § 6–602 is entitled "scope provision," the text only mandates who *must* obtain a license under the Act. It does not control the CLA's entire application or eliminate the provisions designed to prevent predatory lending practices. Those consumer lenders who were licensed must submit to the CLA's non-interest restrictions.

■ Admittedly, under our holding, consumer lenders would have little incentive to obtain a license under the CLA. Without a license, lenders could charge any interest agreed to in writing and would not be subject to the CLA's restrictions. With a license, however, lenders could still charge any interest agreed to in writing but would be subject to the CLA's other restrictions. Yet the alternative makes even less sense—that the CLA was re-enacted in 1980 with the intent that it would have no meaning whatsoever. This strange result is a consequence of the inconsistency between the general usury law and the CLA as the two acts existed during that four-year period. That the legislature enacted inconsistent provisions does not require the courts to nullify those provisions that may co-exist. Moreover, there are benefits to holding a license other than the ability to charge a higher interest rate. For example, licensees may hold themselves out to the public as regulated and subject to governmental oversight. The prohibitions against predatory practices serve obvious and important goals long-recognized by the legislature. Our holding today preserves the legislative goal and purpose in enacting the CLA and avoids judicially abolishing the act for the four-year period immediately following its amendment.

■ Finally, Beneficial makes two constitutional arguments against our interpretation: first, that the CLA is void for vagueness because it is a "tricky on again, off again statute," and second, that the CLA violates equal protection because it irrationally discriminates against CLA licensees. Resolving any doubts in favor of the statute's constitutionality, we reject both arguments. *See, e.g., Big D Const. Co. v. Court of Appeals,* 163 Ariz. 560, 565, 789 P.2d 1061, 1066 (1990).

■ A statute is unconstitutionally vague when "it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit standards for those who will apply it." *State v. Takacs,* 169 Ariz. 392, 394, 819 P.2d 978, 980 (App. 1991). A statute need not, however, be drafted with perfect precision. *Id.* at 395, 819 P.2d at 981. Similarly, a statute does not violate due process merely because it is susceptible to more than one interpretation. *Id.* The CLA's regulations and restrictions apply only to licensed lenders. Both licensed and unlicensed lenders, however, may charge interest rates permitted by the general usury statute. The CLA is not void for vagueness simply because the interest limitation has been rendered inapplicable by the 1980 amendments.

■ Likewise, the CLA does not violate equal protection. We apply the rational basis test when determining whether an economic regulation violates equal protection. *Big D Const. Co.,* 163 Ariz. at 566, 789 P.2d at 1067. Under this test, the legislation "must be rationally and reasonably related to furthering some legitimate governmental interest." *Id.* As noted, one purpose of the CLA is to protect consumers from abusive and predatory practices. This is a legitimate state purpose because consumer borrowers may need more protection from unfair lending practices than their commercial counterparts. This act furthers that legislative goal by requiring licensed lenders—and thus those able to represent to the public that they are regulated consumer loan compa-

**68**

nies—to abide by its restrictions. Consequently, the act does not irrationally discriminate against licensees.

### CONCLUSION

We hold that the non-interest provisions of the Consumer Loan Act applied to licensed lenders between 1980 and 1984. We vacate the court of appeals' decision, the trial judge's order and judgment, and remand to the trial court for further proceedings consistent with this opinion.

THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice, concur.